**STATE**

v.

**David RIENDEAU.**

**No. 81–243–C.A.**

Supreme Court of Rhode Island.

July 21, 1982.

Dennis J. Roberts II, Atty. Gen., Anthony F. Del Bonis, Sp. Asst. Atty. Gen., for plaintiff.

John F. Cicilline, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on the defendant's appeal of his conviction in the Superior Court of one count of robbery and of one count of grand larceny. The defendant raises two issues on appeal: (1) whether the trial justice was clearly wrong in admitting into evidence the defendant's confession and (2) whether the trial justice should have passed the case when the defendant on cross-examination stated that his codefendant received a four-year jail sentence. We find that the trial justice committed no reversible error. Accordingly, the judgments of conviction are affirmed.

On October 19, 1979, at approximately 8:30 p. m., defendant David Riendeau and one Robert Baro entered the office of the Getty Gas Station on Privilege Street in Woonsocket. Both men wore masks and gloves, and Baro carried a rifle. Baro held a female station attendant at gunpoint while Riendeau began emptying the cash register. A male attendant, Bernard Ingalls, entered the office as the robbery was occurring. Baro forced him and his cowork-

er into a bathroom. Approximately one minute later Baro and Riendeau fled into the surrounding woods.

At around 9 p. m., Mr. Robert Dominick, a resident of nearby Blackstone, Massachusetts, discovered Riendeau lurking in his backyard. Riendeau informed Dominick that he had "just held up a Getty Gas Station down the street," and Dominick summoned the local police. Riendeau was taken to the Blackstone police station where he was questioned by Woonsocket police officers Richard Flood and Gordon Tempest. The defendant waived his constitutional rights and confessed his involvement in the holdup. In his oral and written statements Riendeau implicated himself and Robert Baro.

## I

Before trial defendant moved to suppress his confession on the ground that it was constitutionally involuntary. Riendeau testified at the suppression hearing that he had confessed because the police had promised him leniency in sentencing and assistance in obtaining bail and because the police had told him that Robert Baro had already confessed. The state's evidence contradicted defendant's assertions. Officer Gordon Tempest testified that he never made any promises to Riendeau and that at the time he interrogated defendant, he had no knowledge of Baro's arrest. The state also introduced a waiver-of-rights form and a statement form signed by defendant. The waiver form indicated that defendant had read and understood each of his rights and that he had voluntarily waived them. The statement sheet contained a typewritten account of the holdup in which defendant confessed his involvement and implicated Baro. The account had been typed by Officer Tempest. At the conclusion of the statement, however, was a handwritten section penned by defendant which read

"I have given this statement to Officer Richard Flood and Gordon Tempest of my own free will without any threats or promises by either officer. The statement I gave is true."

After considering the evidence the trial justice determined that Riendeau's confession was voluntary and not induced by police promises. The judge explicitly found that Officer Tempest's testimony was honest and credible and that defendant's assertions were suspect. The trial justice stressed the fact that defendant admitted that he had received and understood the Miranda warnings and that defendant had set forth in his own handwritten statement that the police had made no threats or promises. The Superior Court justice also considered that "it isn't at all unusual for a person who has signed a statement to realize later that it was a great mistake; and * * * to find some good reason why the judge should decide in his favor."

Because the trial justice's voluntariness determination is factual, *State v. Carlson*, R.I., 432 A.2d 676, 679 (1981), and his findings of fact on this issue include his assessment of credibility, *State v. Amado*, R.I., 424 A.2d 1057, 1063 (1981), we shall disturb the trial justice's ruling only if it was clearly erroneous. His decision will be considered clearly erroneous if, after reviewing the entire evidence, we are "left with the definite and firm conviction that a mistake has been committed." *Id.* 424 A.2d at 1062 (*citing State v. LaRosa*, 112 R.I. 571, 576, 313 A.2d 375, 377 (1974)). After reviewing the evidence, we conclude that the trial justice was not clearly erroneous in discounting defendant's testimony and believing the assertions of the state's witnesses.

## II

At trial defendant took the stand in his own defense and admitted that he had participated in the holdup and that he had confessed to the police with full understanding. Riendeau's defense was that his confession, though knowing, was induced by promises of leniency and that the male gas station attendant, Bernard Ingalls, had masterminded the holdup. Should the jury have found that Ingalls was a confederate of Baro's and Riendeau's then Riendeau would not have been guilty of count 1 of

the indictment, the robbery of Bernard Ingalls.

Riendeau had not implicated Ingalls in his initial statements to police. Thus, the state prosecutor cross-examined Riendeau about his motivation in covering for Ingalls earlier but accusing Ingalls now. The following colloquy occurred:

"A. * * * Besides that, at that time I wasn't married or nothing. Now, you know, I got a lot at stake here.

" * * *

"Q. What do you have at stake?

"A. My wife, baby.

"Q. How are your wife and baby at stake here?

"A. I'm not going to jail.

"Q. You're not going to go to jail?

"A. I might go to jail, but if I go to jail everybody that was involved in it is going to come with me.

"Q. You're going to drag everybody down with you?

"A. One is already there because of Bernie Ingalls saying that he wasn't involved in it.

"Q. Well, didn't Bob Baro give a statement, a confession?

"A. Yes, he did.

"Q. So he is in jail because of Bernie Ingalls, or because of his own statement?

"A. I don't know. I wasn't here. All I know is he had a public defender, and that he took the four years without a trial."

Immediately after defendant made this last statement, defense counsel at the side bar moved to pass the case, asserting that evidence of a codefendant's conviction should not be heard by the jury. The trial justice denied the motion but cautioned the jurors that they were "not at all concerned with the case of Robert Baro [and] [w]hether his case has been tried or whether it will be tried * * *." The judge further instructed the jurors to strike defendant's last statement from their considerations and deliberations. It is worthy of note that in both his opening remarks to the jury and his final charge the trial justice instructed that the case against Robert Baro was entirely separate from the present case and of no concern to the jury.

■ The issue before us is whether the reference to Baro's jail sentence so prejudiced defendant's case that it warranted a mistrial. It is a general rule of law that if two or more persons are charged with the same criminal offense but are tried separately, then evidence of one defendant's guilty plea or conviction is inadmissible against another defendant as substantive proof of guilt. *United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981); *United States v. Bryza*, 522 F.2d 414, 424–25 (7th Cir. 1975), *cert. denied*, 426 U.S. 912, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976); *United States v. Newman*, 490 F.2d 139, 143 (3d Cir. 1974); *State v. Stefanelli*, 78 N.J. 418, 430, 396 A.2d 1105, 1111 (1979). Courts have found such evidence to be properly admissible and not unduly prejudicial when introduced to impeach an already-convicted defendant testifying in the trial of his codefendant. The trial justice, however, must unequivocally instruct the jury on the limited evidentiary use of the guilty plea or conviction. *See United States v. Halbert*, 640 F.2d at 1004–07; *United States v. Bryza*, 522 F.2d at 425; *State v. Stefanelli*, 78 N.J. at 434, 396 A.2d at 1113. More important to the case at bar, in cases not involving the testimony of a previously convicted codefendant, the courts have held that the prejudice that inures to a defendant when a jury learns of a codefendant's conviction or guilty plea may be sufficiently palliated by an adequate cautionary instruction or may be rendered harmless by other overwhelming evidence of the defendant's guilt. *See United States v. Newman*, 490 F.2d 139, 143 (3d Cir. 1974); *Freije v. United States*, 386 F.2d 408, 411 (1st Cir. 1967), *cert. denied*, 396 U.S. 859, 90 S.Ct. 137, 24 L.Ed.2d 111 (1969); *United States v. Restaino*, 369 F.2d 544, 545–46 (3d Cir. 1966); *Carter v. United States*, 281 F.2d 640, 641 (D.C.Cir.), *cert. denied*, 364 U.S. 880, 81 S.Ct. 168, 5 L.Ed.2d 102 (1960); *State v. Felton*, 131 N.J.Super. 344, 353–54, 330 A.2d 23, 29 (1974); *Com-*

monwealth v. Thomas, 443 Pa. 234, 244–45, 279 A.2d 20, 26 (1971).

In most of the foregoing cases the prosecuting attorney or the court was unequivocally responsible for bringing the fact of a codefendant's conviction before the jury. In the case at bar defendant volunteered the information about Baro's conviction in answer to a question that arguably did not require such a response. For the purposes of this decision, however, we shall assume that counsel for the state at least shared some responsibility for focusing attention upon Baro's admission of guilt.

■ Although it was unfortunate that the jury learned of Baro's jail sentence, the defendant did not suffer prejudice sufficient to warrant a new trial. Not only did the trial justice immediately caution the jurors that they were not to consider Baro's sentence as proof of Riendeau's guilt but also the trial justice gave similar instructions at the opening and close of the trial. Moreover, the other evidence in the case overwhelmingly established Riendeau's guilt of the crimes of which he was convicted. Riendeau admitted on the stand that he had held up the gas station and fully detailed his involvement in the crime. Consequently any possible prejudice to the defendant's case was cured by the instructions of the trial justice and further rendered harmless beyond a reasonable doubt by the overwhelming quantum of proof of the defendant's guilt.

For the reasons stated, the appeal of David Riendeau is denied and dismissed. The judgments of conviction are affirmed. The papers in the case may be remanded to the Superior Court.