STATE

v.

Al PARENTE.

No. 81–106–C.A.

Supreme Court of Rhode Island.

May 13, 1983.

Reargument Denied June 30, 1983.

---

Dennis J. Roberts II, Atty. Gen., Stephen R. Famiglietti, Asst. Atty. Gen., for plaintiff.

John Tramonti, Jr., Providence, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

The defendant, Al Parente, was indicted by a grand jury on May 4, 1979. The indictment charged that he conspired to commit statutory burning in violation of G.L.1956 (1969 Reenactment) § 11–1–6, as enacted by P.L.1975, ch. 283, § 2 and § 11–4–3.[1] Eugene Roberts (Roberts),

---

1. The indictment also charged defendant with committing the substantive crime of statutory burning in violation of G.L.1956 (1969 Reenactment) § 11–4–3 and with accepting a bribe as a

John Adams (Adams), and Francis Davis (Davis) were named as coconspirators.[2]

The case was tried before a justice of the Superior Court sitting with a jury, which returned a verdict of guilty against defendant. He appeals and assigns as error certain evidentiary and other rulings.

The evidence adduced at trial disclosed that on November 29, 1977, the West Warwick fire department responded to a warehouse fire on Brookside Avenue in West Warwick. Acting in his capacity as battalion commander for the West Warwick fire department, defendant supervised the department's response. The firefighters brought the blaze under control after an hour to an hour and thirty minutes. Although the major portion of the fire occurred at the northeast corner of the warehouse where the electrical box was situated, a second fire was located on the floor where some wooden pallets had been placed.

Discharging his responsibility as battalion commander to check for forced entry, defendant pointed out to Chief Boisclair of the West Warwick fire department and to Officer Osenkowski of the West Warwick police department the fact that one of the doors, which had not been nailed shut from the inside, was missing the nuts from the bolts on the door's hinge. The defendant stated to them that the firefighters encountered no resistance when they pried open the door. The lack of stress marks on the bolts indicated, not that the bolts had been forced off, but that someone had removed the nuts from the bolts.

On November 30, Donald Byrne, the arson investigator of the State Fire Marshal's office began to investigate the fire with the West Warwick police department. Samples of burnt wood and paper were sent to the Laboratory for Scientific Criminal Investigation at the University of Rhode Island. As a result of tests, the samples of burnt wood and paper were determined to contain components chemically similar to those contained in gasoline. Byrne therefore concluded that this evidence, along with the facts that there were two separate fires and that the warehouse had had no electrical problems and had no heating system, established that the fire was incendiary.

Roberts testified that he had rented the warehouse in September of 1977 for the purpose of arson. After the fire, Roberts had planned to file a claim for bankruptcy in order to cover up his losses. Roberts stated that Davis had agreed to set the fire for a fee of $5,000 and would use lighter fluid, cardboard, rags, and candles to ignite the blaze. In order to have the fire appear to have been the result of an electrical fire, Davis and Roberts had agreed to set the fire near the electrical box.

Roberts stated that he had met with defendant several times prior to the blaze and both had agreed that on November 29, defendant, working in his role as battalion commander, would slow down the department's response and ensure that the warehouse burned. In addition, Roberts testified that defendant had advised Roberts to remove the nuts from the bolts on the door's hinges to make the fire appear as though it had been set to cover up a theft. Roberts stated that defendant had told him that he would note a forced entry in his report and would keep him informed of any investigations. Roberts alleged that he

---

public official in violation of § 11–7–3. At trial, the state dismissed the count charging defendant with the crime of statutory burning and the trial justice granted defendant's motion to dismiss the count charging defendant with accepting a bribe as a public official.

**2.** The indictment charged all three coconspirators with conspiracy to commit statutory burning in violation of G.L.1956 (1969 Reenactment) § 11–1–6, as enacted by P.L.1975, ch. 283, § 2 and § 11–4–3 and with committing the crime of

statutory burning in violation of § 11–4–3. In addition, the grand jury returned an indictment against Roberts charging him with bribing a public official (defendant) in violation of § 11–7–4.

Prior to trial, Adams entered into an agreement with the Attorney General's office and received immunity from prosecution in return for his testimony. Roberts pleaded guilty, received a prison sentence, and testified for the state at trial.

paid defendant $3,500 for his role in the conspiracy.

The defendant testified at trial and denied any complicity with the alleged conspiracy.

On appeal, defendant presents the following issues:

1. Whether the trial justice erred in permitting into evidence the fact that Roberts had pleaded guilty to statutory burning.

2. Whether the trial justice committed reversible error by refusing to strike a reference made to "previous trials."

3. Whether the trial justice properly allowed testimony concerning Roberts's bankruptcy fraud.

4. Whether the trial justice should have granted defendant's motion for severance.

5. Whether the trial justice committed error in denying defendant's motions for a mistrial and to excuse a juror because of alleged prejudicial publicity.

6. Whether statements made by the prosecutor in his closing argument prejudiced defendant's right to a fair trial and an impartial jury.

7. Whether the evidence was insufficient to support the trial justice's denial of defendant's motion for judgment of acquittal.

I

After jury selection and opening argument, the state called Roberts as a witness and elicited the fact that he had been charged with statutory burning as a result of this case. The state then sought to have Roberts testify that he had pleaded guilty or nolo contendere to that charge. Codefendant Davis objected, and the trial justice held a bench conference. Arguing that the jury is not entitled to know that a coconspirator may have pleaded guilty, both codefendants moved to pass the case. The trial justice held that the state could question Roberts regarding his conviction and sentence for the crime of statutory burning

but not his conviction and sentence for the crime of conspiracy to statutorily burn. Thereafter, the court instructed the jury that the fact of the witness's plea of guilty to a charge of statutory burning should not be taken into consideration as evidence of guilt against either of defendants and is solely permitted for background purposes. Roberts then stated on direct examination that he had pleaded guilty or nolo contendere and received a sentence for the charge of statutory burning that arose out of the facts in this case. The trial justice again cautioned the jury that they could not draw any inferences of guilt against either of defendants because Roberts had pleaded guilty and received a sentence. In addition, the trial justice instructed the jury in his final charge that

"[t]he fact that a person has previously been convicted of a criminal offense, is allowed in evidence, and it can properly be considered by the jury, if the jury wishes to consider it, only in the area of credibility, and may be considered by you as a factor you could weigh with other factors in determining what weight you might give or decide to give to the testimony of such a witness or witnesses. Let me point out that a prior criminal conviction may be used by you only in the area of credibility, and in no other area."

 It is a well-established principle of law that use of a coconspirator's guilty plea or conviction as substantive proof of a defendant's complicity is not admissible in evidence. *State v. Riendeau*, R.I., 448 A.2d 735, 738 (1982); *e.g., United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir.1981); *Bisaccia v. Attorney General of New Jersey*, 623 F.2d 307, 312 (3rd Cir.), *cert. denied*, 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980); *State v. Just*, —— Conn. ——, ——, 441 A.2d 98, 103 (1981); *State v. Stefanelli*, 78 N.J. 418, 430, 396 A.2d 1105, 1111 (1979). However, such evidence is properly admissible and not unduly prejudicial when introduced to impeach a previously convicted defendant testifying in the trial of his codefendant. *State v. Riendeau*, 448 A.2d at 738. In such instances,

the trial justice has a paramount responsibility to instruct the jury on the limited evidentiary use of the guilty plea or conviction. *Id.; see United States v. Halbert,* 640 F.2d at 1004–07; *State v. Stefanelli,* 78 N.J. at 435, 396 A.2d at 1113. In cases not involving the testimony of a previously convicted codefendant, this court stated in *Riendeau* that an adequate cautionary instruction or overwhelming evidence of guilt may sufficiently mitigate or render harmless the prejudice that inures to a defendant when a jury learns of a codefendant's guilty plea or conviction. *State v. Riendeau,* 448 A.2d at 738.

█ Here, the state elicited the guilty plea of the witness (coconspirator) during direct examination. The prosecution is entitled on direct examination to detail the past convictions of its witness in order to divest the jury of the mistaken impression that it is keeping something from it. *State v. Ciulla,* 115 R.I. 558, 568, 351 A.2d 580, 586 (1976) (citing *United States v. Rothman,* 463 F.2d 488, 490 (2d Cir.1972)). Moreover, this maneuver does not constitute impeachment but is merely part of the "legitimate thrust and riposte of trial tactics." *State v. Ciulla,* 115 R.I. at 568, 351 A.2d at 586 (quoting *Commonwealth v. Garrison,* 398 Pa. 47, 52, 157 A.2d 75, 77 (1959)). Other courts have held that the prosecution is entitled on direct examination to elicit a codefendant's guilty plea or conviction when it is offered to further the jury's task of evaluating the credibility of a codefendant and when an adequate cautionary instruction is given. *United States v. Halbert,* 640 F.2d at 1004; *see e.g. United States v. Veltre,* 591 F.2d 347, 349 (5th Cir.1979); *United States v. Rothman,* 463 F.2d 488, 490 (2d Cir.), *cert. denied,* 409 U.S. 956, 93 S.Ct. 291, 34 L.Ed.2d 231 (1972). The *Halbert* court stated that

"[a]s a result of plea bargaining, it is often the prosecution which produces a codefendant and elicits testimony tending to show the substantive guilt of the defendant. This is, of course, admissible. As a part of that testimony, the trier of

fact should know the witness' total connection to the defendant or to the event * * *. Thus, when the prosecution examines the codefendant as its witness in support of its case-in-chief, a question about the guilty plea is legitimate as the purpose is to support the reasonableness of the witness' claim to firsthand knowledge because of admitted participation in the very conduct which is relevant. The fact [that] a witness has formally admitted personal responsibility enhances the circumstances adding up to that witness' believability." *United States v. Halbert,* 640 F.2d at 1005.

Reviewing the record in the present case, we find that the prosecutor limited his inquiries about the guilty plea. On direct examination, the prosecutor elicited the fact that Roberts had pleaded guilty and had received a sentence.

This court is sensitive to the fact that evidence of a codefendant's guilty plea is amenable to misuse. In the absence of proper cautionary instructions, it is possible that the jury could use the plea as substantive evidence of a defendant's guilt. Here, however, the trial justice averted the danger when he apprised and cautioned the jury that it could use the plea only to assess Roberts's credibility. The trial justice so instructed the jury when the state elicited the evidence and again when he gave his final instruction. Therefore, the reference to Roberts's plea and sentence did not constitute reversible error.

## II

The defendant next argues that the trial justice erred in refusing to strike a reference by a state witness to "previous trials." Such refusal was not an abuse of discretion. The state called Detective Frenette as a witness; during a line of questioning, through which the state sought to introduce photographs of the burned warehouse and to lay a custody foundation for pieces of charred wood and other items taken from the scene, the following exchange occurred:

"Q. And the tags that are on those items now, are they the original tags that you put on them?

"A. No, they are not.

"Q. When did you put the original tags on?

"A. Just before this trial started.

"Q. And the original tags?

"A. The original tags were all worn and ripped in previous trials.

"Q. When did you put the original tags on the items?

"A. Morning of the fire."

The defendant moved for a mistrial on the ground that the reference to "previous trials" was prejudicial and that a cautionary instruction would be futile. Denying the motion, the trial justice stated that the reference was not prejudicial because the jury had heard information earlier concerning other proceedings involving Roberts and Adams and that there had been no mention that defendant or Davis had been involved in a previous trial. The defendant then moved to strike the answer as being nonresponsive and to instruct the jury accordingly. The trial justice denied the motion.

■ In determining whether the failure of a trial justice to grant a motion to strike constitutes reversible error, this court must decide if the alleged error had an adverse effect on defendant's case. If defendant is not prejudiced, then the error is not reversible. See State v. Aptt, R.I., 441 A.2d 824, 827 (1982); State v. Colasanti, 100 R.I. 431, 438, 216 A.2d 700, 703 (1966); State v. Lacy, 87 R.I. 134, 138, 138 A.2d 827, 829 (1958). Moreover, the determination of whether a questioned statement is harmless or improperly prejudicial is addressed to the sound discretion of the trial justice. See State v. Peters, 82 R.I. 292, 296–97, 107 A.2d 428, 430 (1954).

■ It is clear from the record that there was no mention that defendant or Davis had been involved in another proceeding

and that evidence of other trials had already been introduced into evidence. More important, however, is the fact that defendant and codefendant Davis themselves elicited evidence of other proceedings.[3] Moreover, the trial justice had previously instructed the jury to disregard any reference to any bankruptcy-court proceeding or any hearing at the bankruptcy court. Thus, defendant has not demonstrated the adverse effect on his case necessary to constitute prejudicial and reversible error.

### III

The next issue raised concerns defendant's claim that the trial justice erred when he allowed the state to introduce testimony concerning Roberts's bankruptcy fraud. He argues that evidence of the bankruptcy fraud was irrelevant to his trial for conspiracy to statutorily burn in that the state had not alleged that defendant was aware of Roberts's motive in setting the fire. We disagree.

■ The determination of whether evidence is legally relevant is within the sound discretion of the trial justice, whose ruling will not constitute reversible error unless it is a prejudicial abuse of discretion. State v. Gelinas, R.I., 417 A.2d 1381, 1386 (1980); State v. Camerlin, 116 R.I. 726, 729, 360 A.2d 862, 865 (1976); State v. Verdone, 114 R.I. 613, 617, 337 A.2d 804, 808 (1975). The test of relevancy is whether the proffered evidence renders the existence of the fact sought to be proven more or less probable than it would have been without the evidence. State v. Santos, R.I., 413 A.2d 58, 69 (1980); McCormick's Handbook of the Law of Evidence, § 185 at 437 (2d ed. Cleary 1972); 1 Weinstein, Evidence ¶ 401–[06], at 401–26 (1982). Two counterbalancing factors that may outweigh the probative force of relevant evidence are whether the facts are offered for the purpose of arousing the passions of the jury and whether the prof-

---

**3.** It is important to note that defendant failed to raise an objection whenever Davis adduced such testimony.

fered facts have a direct tendency to create confusion in the minds of the jurors by introducing a side issue that would distract the jury from the main issue. *State v. Amaral*, 109 R.I. 379, 385–87, 285 A.2d 783, 786–87 (1972); *McCormick's Handbook of the Law of Evidence*, § 185 at 438–39 (2d ed. Cleary 1972); *see State v. Bowden*, 113 R.I. 649, 657–58, 324 A.2d 631, 637 (1974), *cert. denied*, 419 U.S. 1109, 95 S.Ct. 782, 42 L.Ed.2d 805 (1975).

■ It is clear from a review of the record that Roberts's bankruptcy fraud was the motivating force behind the conspiratorial agreement. However, it is also apparent that defendant had no knowledge of Roberts's underlying scheme when he agreed to participate in the conspiratorial objective. Nevertheless, the evidence of the bankruptcy fraud was relevant in establishing the testimonial qualifications of Roberts as a witness. *See* 2 Wigmore, *Evidence* § 475 at 633–34 (Chadbourn rev. 1979). The fact that assertions were made by Roberts, a person who was the engineering force behind the conspiracy, is relevant to show the truth of the fact asserted. *See id.* Moreover, there were no counterbalancing factors shown which outweighed the relevancy of this evidence. Therefore, defendant's exception is denied.

## IV

The defendant further assigns error to the trial justice's denial of defendant's motion for severance. Because the state did not allege that he was aware of the bankruptcy fraud as the motivation behind the arson, defendant contends that this evidence, arguably admissible against Davis, prejudiced him in the eyes of the jury. This result, he continues, along with the trial justice's failure to instruct the jury that it could use evidence of the bankruptcy fraud only to show Roberts's motivation or to support the case against Davis, constituted reversible error. We cannot agree.

■ It is well settled that a criminal defendant is not entitled to severance as a matter of right; a motion for severance is directed to the discretion of the trial justice. *State v. Gibbons*, R.I., 418 A.2d 830, 835 (1980); *State v. Patriarca*, 112 R.I. 14, 28, 308 A.2d 300, 310 (1973). On review, this court will not reverse a trial justice's denial unless the defendant "affirmatively shows that he has in fact suffered 'prejudice sufficiently substantial to impinge upon his right to a fair trial.'" *State v. Gibbons*, 418 A.2d at 835 (quoting *State v. Patriarca*, 112 R.I. at 28, 308 A.2d at 310). In *Patriarca*, this court stated that "[r]eal prejudice is something more than mere disadvantage, but generally it will be found when the court determines that there is a real doubt about how the trial irregularity may have affected the jury." *State v. Patriarca*, 112 R.I. at 29–30, 308 A.2d at 311. Generally, a trial justice should grant a motion for severance when defendants jointly indicted intend to present antagonistic defenses, when the jury would be unable to isolate and consider the evidence admissible in regard to the defendant in determining his guilt or innocence, or when severance will otherwise best serve the ends of justice. *State v. Carsetti*, 111 R.I. 642, 645, 306 A.2d 166, 168 (1973); 2 Wharton, *Criminal Procedure*, § 304 at 164–166 (12th ed. 1975).

■ As a general rule, alleged coconspirators and the substantive offenses they allegedly conspired to commit may be tried jointly. *United States v. Luna*, 585 F.2d 1, 5 (1st Cir.), *cert. denied*, 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978); *United States v. Edwards*, 488 F.2d 1154, 1160 (5th Cir.1974). In the present case, the conspiracy charge against defendant and Davis and the statutory-burning charge against Davis were directly related to and part of the same overall plan. Separate trials would necessarily have involved repetitive use of the same evidence and facts. Moreover, there was no great disparity in the weight of the evidence which might have strongly established Davis's guilt while improperly tainting defendant. *See United States v. Kelly*, 349 F.2d 720, 756–59 (2d Cir.1965), *cert. denied*, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966). Both defend-

ant and Davis testified at trial and did not assert inconsistent or antagonistic defenses. They both denied participation in the conspiracy, and both asserted alibis that did not infringe upon the testimony of the other. In addition, defendant points out that testimony elicited at trial indicated that he was unaware of the bankruptcy fraud. Solely because a defendant has a limited role to play in the conspiracy, and the evidence introduced against his coconspirator is prejudicial to him and is more damaging than the evidence against him, does not entitle him to a severance. *United States v. Richman,* 600 F.2d 286, 299 (1st Cir.1979); *United States v. Smolar,* 557 F.2d 13, 21 (1st Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 453 (1977); 1 Wright, *Federal Practice and Procedure:* Criminal § 223 at 799–802 (2d ed. 1982). Furthermore, the trial justice impressed upon the jury its duty to determine the guilt of each defendant individually. Weighing the benefits of judicial economy against the absence of an affirmative showing of substantial prejudice against defendant, the trial justice correctly denied the motion for severance.

## V

On March 6, 1980, the Pawtuxet Valley Daily Times published a front page article headlined "Roberts details his tale of arson—Calls Parente overseer of blaze 'so no firemen would get hurt.'" The article included a picture of defendant. Recapitulating Roberts's testimony, the article stated that defendant had agreed to slow the firefighters' response to the warehouse blaze in order to "let it burn." In addition, the article restated that defendant had received $3,500 for his part in the arson. The defendant brought the article to the attention of the trial justice and moved for a mistrial. In order to determine whether the jurors had been exposed to the publication, the trial justice conducted an individual voir dire of the jury. The voir dire disclosed that two jurors had seen the photograph of defendant but that they had not read the article. One of these jurors had initially denied mentioning the article to the other

members of the jury. Because testimony had existed before the court that this juror had made such a statement, the trial justice cautioned the juror to think carefully about his statement. The juror then stated that he may have mentioned to the other jurors that he had seen the photograph and flipped the page. Moreover, another juror indicated that one juror had mentioned the picture to them solely as a possible explanation for the individual voir dire. The defendant moved again for a mistrial and in the alternative for the trial justice to excuse the juror. Convinced that the juror in question had not intentionally told an untruth but had answered incorrectly because of his nervousness, the trial justice denied the motion to excuse. The trial justice denied the motion for a mistrial on the basis that no juror had read the article and that the article was not inherently prejudicial to defendant's rights so as to impinge directly on the jury's ability to be fair and impartial. The defendant claims that the trial justice erred in denying the motion for a mistrial and that he abused his discretion in failing to excuse the juror in question. The defendant contends that the article prejudiced his case with the jury. We cannot agree.

Before considering the effect of the article on defendant's right to a fair trial, we must dispose of defendant's challenge regarding the qualification of one of the jurors to hear the case fairly and impartially.

■■■ One challenging the qualification of jurors on the ground that they are unable to afford the defendant a fair and impartial trial has the burden of establishing the existence of partiality or bias. *State v. Pella,* 101 R.I. 62, 64, 220 A.2d 226, 228 (1966). This determination is within the discretion of the trial justice, and on appeal this court will not set aside the finding unless there is an abuse of discretion. *Id.* Here, defendant has failed to set forth any basis in the evidence to support the conclusion that the juror in question was partial or biased. His argument that the

trial justice should have excluded the juror because he lied initially about mentioning the article to other jurors is clearly without merit. We are unable to conclude that the trial justice abused his discretion in denying the motion to excuse.

■ Next, we must consider whether the trial justice correctly determined that the article was not inherently prejudicial to defendant's rights so as to impair directly the jury's ability to be fair and impartial by reason of mere knowledge of the article's existence. *See, e.g., State v. Bishop*, R.I., 439 A.2d 255, 258–59 (1982); *State v. Patriarca*, 112 R.I. at 23, 308 A.2d at 308 (1973); *Trombley v. Langlois*, 91 R.I. 328, 336, 163 A.2d 25, 30 (1960). It is necessary, therefore, to evaluate the degree of juror exposure to the publication and the nature of the information publicized. *Palmigiano v. State*, 120 R.I. 402, 407–08, 387 A.2d 1382, 1385–86 (1978) (quoting *United States v. Thomas*, 463 F.2d 1061, 1063 (7th Cir.1972)). Reviewing the record before us, we find it apparent that the degree of juror exposure to the article was limited to the fact that the Pawtuxet Valley Daily Times had printed an article about defendant and a picture of him. There was no evidence that any juror had read the article. Indeed, the newspaper article was an accurate condensed recapitulation of testimony admitted into evidence and heard by the jury. *See Palmigiano v. State*, 120 R.I. at 408, 387 A.2d at 1385 (prejudicial publicity generally exists where publication contains information about the defendant that would not be admissible before the jury in court). Therefore, because the defendant has failed to show any reasonable likelihood of prejudice from the article, his argument on this issue is unpersuasive.

## VI

We now consider defendant's challenge to statements made by the prosecutor in his closing argument to the jury. The defendant contends that the remarks by the prosecutor in his closing argument were prejudicial and that the trial justice committed reversible error in denying his objections to the statements.

During the state's closing argument, the prosecutor stated that defendant admitted having had several meetings with Roberts because the state could bring in Roberts's girlfriend, who was present at the meetings, to testify that the meetings had occurred. The defendant asserts that this statement put before the jury offers of testimony not in evidence. Moreover, defendant claims additional error in the state's closing argument at the point where the prosecutor stated:

"What are the defense lawyers implying to you, ladies and gentlemen? That there's a conspiracy between Roberts and Adams for no reason to set up these two men. And who else is part of the conspiracy, the Federal Bureau of Investigation? The Fire Marshal's Office? The West Warwick Police Department? The Attorney General's Department? Me? You? If you come back here with the guilty verdict, Frank Davis is going to say you conspired to find him guilty. That's how much sense that makes."

The defendant claims that this comment was inflammatory and had no appropriate purpose. We find both arguments unpersuasive.

■ Determining whether a challenged remark is harmful or prejudicial depends upon the evaluation of its probable effect on the outcome of the case within the remark's factual context. *State v. Collazo*, R.I., 446 A.2d 1006, 1010 (1982). The prosecutor is generally allowed considerable latitude in his closing argument as long as he stays within the evidence and the legitimate inferences drawn therefrom. *State v. Scott*, 114 R.I. 132, 137, 330 A.2d 66, 70 (1974); 1 ABA Standards for Criminal Justice, Standard 3–5.8 at 3.88–3.91 and commentary (2d ed. 1980). However, prejudice clearly inheres if the challenged comments "are totally extraneous to the issues in the case and arouse the passions of the jury" against defendant. *State v. Scott*, 114 R.I. at 137, 330 A.2d at 70 (quoting *State v.*

Mancini, 108 R.I. 261, 273–74, 274 A.2d 742, 748 (1971)); *see, e.g.,* 1 ABA Standards for Criminal Justice, Standards 3–5.8(a), (c), 3–5.9 at 3.87, 3.91 (2d ed. 1980).

■ The record indicates that defendant had several meetings with Roberts at the T.J. Lounge and that Roberts's girlfriend attended some of these meetings. Apparently, the state sought to justify defendant's admission of meeting Roberts in light of defendant's denial of entering into any agreement with him. In addition, codefendant Davis testified on cross-examination that he did not know Adams and that he had had only a passing acquaintance with Roberts. When questioned by the prosecution about why Adams and Roberts would implicate him, Davis stated that he believed Adams and Roberts were conspiring to implicate him wrongly and to cover up other people's actions. The prosecution evidently sought to counter this contention by emphasizing to the jury that evidence from other sources existed which pointed to defendant's guilt. We cannot conclude that these statements were extraneous to the issues in the case or inflamed the passions of the jury.

## VII

The defendant's final claim of appeal is that the trial justice erroneously denied his motion for a judgment of acquittal. In challenging this ruling, defendant asserts that because the substantive crime of statutory burning ended when the fire was lit and because his participation began after the burning, his acts did not fall within the purview of the crime of conspiracy to statutorily burn. We do not agree.

■ In ruling on a motion for a judgment of acquittal, both the trial justice and this court on appeal must weigh the evidence in the light most favorable to the state, draw from such evidence all reasonable inferences that are consistent with the guilt of the accused, and give full credibility to the state's evidence. *State v. Darcy,* R.I., 442 A.2d 900, 901 (1982); *State v. Rose,* 112 R.I. 402, 406, 311 A.2d 281, 283 (1973).

However, the trial justice must grant the motion if the evidence so viewed fails to establish the defendant's guilt beyond a reasonable doubt. *State v. Darcy,* 442 A.2d at 901–02; *State v. Rose,* 112 R.I. at 406, 311 A.2d at 283. The record supports the trial justice's finding that the state sufficiently met its burden of proof to withstand this motion.

■ The record established that Roberts and defendant had met on various occasions at which they discussed the burning of Roberts's warehouse. It is clear from Roberts's testimony that defendant agreed to slow down the fire department's response to the fire in order to enable the warehouse to burn, to point out the broken door hasp (which would indicate a forced entry), and to keep Roberts informed of any investigations. Moreover, Roberts set the date of the fire after determining from defendant the nights on which he would be working as battalion commander.

The defendant's argument that his acts did not fall within the proscribed activity of § 11–4–3, and that therefore the evidence did not support a finding of guilty to the charge of conspiracy to statutorily burn is unsupported by case law. The common-law crime of conspiracy is defined as a combination of two or more persons to commit an unlawful act or to do a lawful act for an unlawful purpose. The gist of the crime is entry into an unlawful agreement; and once that occurs, the offense is complete. The crime of conspiracy does not require that any overt acts be committed in furtherance of the unlawful agreement. *State v. LaPlume,* 118 R.I. 670, 677, 375 A.2d 938, 941 (1977); *State v. Edwards,* 89 R.I. 378, 389, 153 A.2d 153, 160 (1959); *State v. Bacon,* 27 R.I. 252, 256–57, 61 A. 653, 654–55 (1905).

The common objective of the conspiratorial agreement was the burning of the warehouse. Although it is evident that some of the defendant's activities constituted acts of concealment, the facts clearly show a common intent among the defend-

ant, Roberts, Davis, and Adams to accomplish the objective of burning the warehouse. This court is cognizant of the necessity for a clear delineation of the time frame of a conspiracy in situations in which acts of concealment may indefinitely prolong the life of a conspiracy. *See Developments in the Law—Criminal Conspiracy,* 72 Harv.L.Rev. 920, 960–63 (1959); *see also* Note, *Conspiracy, Concealment and the Statute of Limitations,* 70 Yale L.J. 1311, 1311–16 (1961). Ascertaining the point in time at which a conspiracy terminates is essential in cases in which a court must determine whether the statute of limitations bars prosecution, whether an alleged coconspirator has entered into the original conspiracy or a new one, and whether a declaration of a coconspirator is within the time scope of the conspiracy. *See Developments in the Law—Criminal Conspiracy,* 72 Harv.L.Rev. 920, 960–63 (1959). These concerns are not present here. It is the defendant's argument to participate in the conspiracy whose objective was the burning of the warehouse which is subject to the charge of conspiracy to statutorily burn.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.