**STATE**

v.

**Michael KANER.**

**No. 82–255–C.A.**

Supreme Court of Rhode Island.

Aug. 4, 1983.

Dennis J. Roberts, II, Atty. Gen., James P. Renaldo, Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Chief Appellate Asst. Public Defender, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

The defendant, Michael Kaner, was indicted by a grand jury on January 30, 1981. The indictment charged that the defendant did murder Anthony Znoj in violation of G.L.1956 (1969 Reenactment) § 11–23–1, as amended by P.L.1980, ch. 247, § 3.

The case was heard before a justice of the Superior Court sitting with a jury, which returned a verdict of guilty of murder in the second degree.

The underlying facts are as follows. The defendant, Michael Kaner, lived with his uncle Anthony Znoj, the deceased, at 1216 Roosevelt Avenue, Pawtucket, Rhode Island. The record reveals that on October 26, 1980, a Sunday morning, Paula Rossi, a granddaughter of the deceased, received a call at 9 a.m. from defendant advising her that her grandfather would not be attending church because he was not feeling well. Paula testified that, prior to this date, on October 19, 1980, he had appeared to be in good health.

Shortly thereafter at 9:15 a.m., Barbara Roach, another granddaughter of the deceased, also received a call from defendant. He told her that her grandfather had fallen and had received several bruises. The defendant at this point was apparently shaken, so Barbara called the rescue squad. Both granddaughters averred that the victim appeared to have been in good health the week before his death. Paula testified that she had taken the victim to church a week earlier and that he had seemed fine and had had no physical problems or bruises. Barbara stated that on October 23, 1980, her grandfather appeared to be fine, without any bruises or other physical ailments. However, he did inform her that he was having trouble with defendant and that defendant was upset and disturbed.

Patrolman Roy Clary and Detective James J. LaPierre testified that upon arriving at defendant's home on Sunday, October 26, 1980, defendant informed them that the victim had collapsed on the floor in the bedroom and that he had picked him up from the floor and put him on his bed. Patrolman Clary further deposed that there were no signs of a struggle in the bedroom and that when he arrived, the victim was lying on the bed naked from the waist up, showing several bruises and abrasions on his body.

Doctor Arthur C. Burns, the state medical examiner, established that his external examination revealed multiple bruises, abrasions, and contusions on the victim's body. In particular, he noted several large bruises on the victim's chest, including a depression and a palpable fracture, and various bruises on the victim's neck, face, and arms. The doctor's internal examination revealed seventeen fractured ribs with corresponding interstitial muscle hemorrhage, complete fracture of the midportion of the sternum with corresponding soft-tissue hemorrhage, a bruised spleen, a fractured hyoid bone, and a sprain of the first and second cervical vertebrae. Identifying the state's exhibits Nos. 6–13 as photographs of the victim, Dr. Burns averred that the photographs showed the extensive reddish-blue bruises covering the victim's body. He concluded that death had been caused by blunt-force trauma that was not a result of a fall but was rather the result of a severe beating or stomping. Moreover, he noted that a hand or a foot could qualify as a blunt-force instrument.

At the close of the evidence, defendant requested that the trial justice instruct the jurors that they could find him guilty of the lesser included offense of voluntary or involuntary manslaughter. The trial justice denied the requested instruction. The defendant appeals and raises two issues, claiming (1) that the trial justice erred in failing to give a charge on manslaughter, a lesser included offense, and (2) that the trial justice erred in allowing into evidence testimony of a neighbor who stated that he heard defendant and the victim arguing.

I

The defendant argues that an indictment is deemed to charge all lesser included offenses and that an instruction of lesser included offenses must be given when the evidence, however minimal, warrants it. There is no dispute that a defendant is entitled to an instruction on a lesser included offense if the evidence warrants it. The defendant contends that although the victim was elderly and weak, the beating was "severe," and death resulted from a beating with hands and feet, those factors alone do not lead inescapably to the conclusion that he intended to kill his uncle. Thus, defendant asserts that an involuntary-manslaughter instruction was warranted because the evidence was not so compelling and unequivocal that a jury finding of no malice would have been irrational. Moreover, he maintains that an involuntary-manslaughter instruction was authorized because the jury could have inferred that he had acted out of some kind of provocation.

■ There is no dispute that a defendant is entitled to an instruction on a lesser included offense if the evidence warrants it. *Beck v. Alabama,* 447 U.S. 625, 633–36, 100

S.Ct. 2382, 2387–89, 65 L.Ed.2d 392, 400–02 (1980); *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844, 847 (1973); *see State v. Goff,* 107 R.I. 331, 336, 267 A.2d 686, 688 (1970).

◼ Voluntary manslaughter is defined as an intentional homicide without malice aforethought in a sudden heat of passion as a result of adequate legal provocation. *State v. Vargas,* R.I., 420 A.2d 809, 815 (1980); *State v. Goff,* 107 R.I. at 337, 267 A.2d at 689. Involuntary manslaughter is defined as an "unintentional homicide without malice aforethought, committed either in the performance of an unlawful act not amounting to a felony or in the performance of a lawful act with criminal negligence." *State v. Vargas,* R.I., 420 A.2d at 815. Therefore, before the trial justice is required to give an instruction on manslaughter, the evidence must show, however minimally, that the defendant acted without malice, either in the heat of passion with adequate provocation or in the commission of an unlawful nonfelonious act or in the performance of a lawful act with criminal negligence.

◼ A reading of the record reveals that the victim was an elderly man and that defendant inflicted a severe and brutal beating upon him. There is nothing in the record to show that there were any inconsistencies in the state's chain of circumstantial evidence. The record is completely barren of any evidence to demonstrate that defendant acted in the heat of passion with adequate provocation. The defendant fails to point out any evidence in the record that would have required an instruction regarding voluntary manslaughter. Moreover, the record fails to reveal any evidence that would support an instruction of involuntary manslaughter. There is nothing in this record that indicates that the killing was unintentional.[1]

To phrase the point another way, no disputed factual element existed in the evi-

dence; a finding by the jury that defendant did not have the requisite malice aforethought, in light of the severity and brutality of the beating plus the age and feebleness of the victim, would have been irrational. In conclusion, we are of the opinion that a view of the evidence would not warrant a verdict of manslaughter, voluntary or involuntary.

## II

The other issue raised by defendant is whether the trial justice committed reversible error in permitting testimony that defendant and the victim on two separate occasions had been yelling at one another. The defendant contends that testimony by Leo Bessette, a neighbor, stating that on two occasions the victim and defendant argued was irrelevant and highly prejudicial to defendant.

We have consistently held that the question of whether or not evidence is legally relevant is within the discretion of the trial justice, and his determination will constitute reversible error only if it is a prejudicial abuse of discretion. *State v. Parente,* R.I., 460 A.2d 430, 436 (1983); *State v. Verdone,* 114 R.I. 613, 617, 337 A.2d 804, 808 (1975).

◼ Proffered evidence is considered relevant when it "renders the existence of the fact sought to be proven more or less probable than it would have been without the evidence." *State v. Parente,* R.I., 460 A.2d at 436; *McCormick's Handbook of the Law of Evidence,* § 185 at 437 (2d ed. Cleary 1972). The probative force of relevant evidence may, however, be outweighed by two counterbalancing factors: whether the facts are offered mainly to arouse the jury's passions and whether the proffered facts tend directly to create confusion in the jurors' minds by introducing a side issue. *State v. Parente,* R.I., 460 A.2d at 436–37; *McCormick's Handbook of the Law*

---

1. The cases relied upon by defendant all include some evidence that would have sup-

ported a jury verdict of manslaughter.

*of Evidence,* § 185 at 439–40. Evidence of motive is often probative and relevant in certain circumstances. *State v. Gazerro,* R.I., 420 A.2d 816, 825 (1980).

 It is evident that the testimony of Leo Bassette coincided with the testimony of Barbara Roach, who stated that the deceased had been having trouble with defendant and that defendant had appeared upset and disturbed. The state evidently introduced this evidence in order to establish motive or malice. We cannot conclude that this evidence was not relevant.[2] Furthermore, no counterbalancing factors existed that might have outweighed the probative force of the evidence.

We therefore are of the opinion that the testimony was relevant and properly admitted. The trial justice did not abuse his discretion.

The defendant's appeal is denied and dismissed, the judgment of conviction appealed from is sustained, and the case is remanded to the Superior Court.

---

2. It is necessary to note that any history of prior hostilities between the deceased and defendant cannot be interpreted as an element of provocation because the incidents did not immediately precede the killing. Thus, our analysis in part I remains unchanged.