**STATE**

v.

**Rafael VASQUEZ.**

**No. 92–52–C.A.**

Supreme Court of Rhode Island.

Feb. 22, 1993.

James E. O'Neil, Atty. Gen., Aaron Weisman, Jeffrey Greer, Asst. Attys. Gen., for plaintiff.

Richard Casparian, Public Defender, Catherine Gibran, Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

FAY, Chief Justice.

The defendant, Rafael Vasquez (Vasquez), appeals from a Superior Court conviction of aiding and assisting in the commission of murder, aiding and assisting in assault with intent to commit murder, and conspiracy to commit murder. The defendant was sentenced to life imprisonment for aiding and assisting in the commission of murder, twenty years for aiding and assisting in assault with intent to commit murder, and ten years for conspiracy to commit murder. The defendant contends that the trial justice erred (1) by denying the defendant's motion to sever his trial from that of his codefendant, Jose Lopez (Lopez), and (2) by denying the defendant's motion for a new trial.

The facts of this case have been reviewed by this court in *State v. Lopez*, 583 A.2d 529 (R.I.1990). We shall summarize the events of *Lopez* that are pertinent to this defendant.

On the evening of March 13, 1987, a body of a woman was found lying in the street at the intersection of Barbara and Bowlet Streets in the city of Providence. The woman, a victim of a shooting, was identified as Clara Aguila (Aguila), known also as Clara Aguila–Jimenez and Rosa Maria Gonzalez. A few blocks away, at approximately the same time, the body of another woman was discovered. This woman, also the victim of a shooting, was identified as Reyna Martinez–Marchado (Martinez–Marchado). *Id.* at 530–31.

The two women were transported to Rhode Island Hospital. Aguila was treated for gunshot wounds to the left shoulder, left thigh, and left hand and was subsequently discharged from the hospital on March 17, 1987. Three hours after arriving at the hospital, Martinez–Marchado died as a result of gunshot wounds to the back of the head. *Id.* at 531.

Aguila informed police that she had been shot by a man known as Pepin while she was in a car driven by Pepin's nephew, Felo. Aguila later identified the two men from photographs shown to her by the Providence police. Pepin was identified as Lopez, and Felo was identified as Vasquez. *Id.*

According to the testimony of Aguila, on the morning of March 13, 1987, the Providence police responded to a telephone call from 69 Adelaide Avenue. *Id.* Aguila and Martinez–Marchado lived in an apartment on Adelaide Avenue, with Lopez and defendant occasionally staying overnight. Martinez–Marchado invited the police into the house and led them to the apartment on the

second floor. *Id.* Once inside the apartment she turned over to them a quantity of cocaine and a sum of money. The police confiscated the cocaine and the money, which Aguila testified belonged to Lopez. When Lopez arrived at the apartment and discovered that his cocaine and money were missing, he became enraged. He argued with Aguila and threatened to kill her. Aguila testified that Lopez fired a shot at her while she was lying in bed. The gunshot missed Aguila and lodged in the headboard of the bed. *Id.*

Lopez left the apartment and ordered Aguila to remain. When he returned he took Aguila to the home of Juana Lorenzo (Lorenzo) where Lopez repeatedly beat Aguila with a gun. Lorenzo testified that Lopez told her he was beating Aguila because he believed that Aguila was involved in the theft of his money and cocaine. Lopez and Aguila left Lorenzo's home and returned to the Adelaide Avenue apartment. Lopez once again left, ordering Aguila to remain. When Lopez returned, he ordered Aguila out of the apartment and forced her into an automobile. Aguila testified that defendant drove, with Martinez–Marchado sitting directly to his right; Jorge Fresneda (Fresneda) sat to the right of Martinez–Marchado and Aguila to Fresneda's right. Lopez sat alone in the back seat of the automobile. Aguila observed that both defendant and Lopez possessed guns. *Id.* at 532. Aguila testified that after driving around Providence for a "little bit," defendant asked Lopez, "[S]hall we kill them here?" Lopez said, "[N]o," and directed defendant to keep driving. *Id.* A short time after this conversation, Lopez shot Aguila in the back. Aguila stated that before Lopez shot her, he informed her that he was going to kill her. Aguila testified that after she had been shot, Lopez asked defendant if she was still breathing. When defendant informed Lopez that she was in fact still breathing, Lopez shot her again. After the second shot Lopez again asked defendant if Aguila was still breathing, but Aguila held her breath and defendant told Lopez, "[S]he's dead already." Fresneda then pushed Aguila out of the moving vehicle and onto the street.

While lying in the street, Aguila heard gunfire from a short distance away. *Id.*

Fresneda's testimony substantially corroborated the testimony of Aguila. He stated that he was in the automobile when Aguila and Martinez–Marchado were shot. Fresneda testified that Lopez first shot Aguila and then, a few blocks away, shot Martinez–Marchado. Fresneda pushed both bodies out the passenger's side door. *Id.*

Lopez was subsequently convicted of first-degree murder in the death of Martinez–Marchado, assaulting Aguila with intent to commit murder, and conspiring to commit murder. Vasquez was convicted of aiding and assisting Lopez to commit the murder of Martinez–Marchado, aiding and assisting Lopez in assaulting Aguila with intent to commit murder, and conspiring to commit murder. *Id.* at 531.

## I

## SEVERANCE

The defendant contends that the trial justice erred in denying his motion to sever his trial from that of Lopez. This error, defendant asserts, resulted in a fundamentally unfair trial. The defendant argues that the evidence against Lopez was "overwhelmingly disparate" and that the quantum of evidence against Lopez resulted in the jury's failure to separate the incriminating evidence against Lopez from the evidence against defendant. The defendant contends that he suffered a prejudicial "spill-over" effect from the incriminating evidence against Lopez.

The defendant argues that the heinous acts committed by Lopez prejudiced him in the eyes of the jury. He contends that any perceived guilt on his part derived from his relation to and association with Lopez. The defendant asserts that the jurors could not "compartmentalize" the evidence against him because they were overwhelmed with evidence against Lopez. The defendant believes that severance would have best served the ends of justice.

■ It is well settled in this jurisdiction that a criminal defendant is not entitled to severance as a matter of right; a motion for severance is an issue directed to the sound discretion of the trial justice. *State v. Gibbons*, 418 A.2d 830, 834–35 (R.I.1980). A trial justice's denial of a motion to sever will not be reversed on review unless there has been a clear abuse of discretion. *State v. Patriarca*, 112 R.I. 14, 28, 308 A.2d 300, 310 (1973). The defendant must "affirmatively [show] that he has in fact suffered 'prejudice sufficiently substantial to impinge upon his right to a fair trial.'" *Gibbons*, 418 A.2d at 835. "Real prejudice is something more than mere disadvantage, but generally it will be found when the court determines that there is a real doubt about how the trial irregularity may have affected the jury." *Patriarca*, 112 R.I. at 29–30, 308 A.2d at 311.

"[A] trial justice should grant a motion for severance when defendants jointly indicted intend to present antagonistic defenses, when the jury would be unable to isolate and consider the evidence admissible in regard to the defendant in determining his guilt or innocence, or when severance will otherwise best serve the ends of justice." *State v. Parente*, 460 A.2d 430, 437 (R.I.1983).

The defendant does not argue that there were antagonistic defenses, nor does he argue that there was a codefendant confession implicating him, making an analysis under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), unnecessary.

■ It is our responsibility to balance the right of a defendant to a fair trial against " 'the public's interest in [an] efficient and [an] economic administration of justice.'" *State v. Cassey*, 543 A.2d 670, 674 (R.I.1988). " '[T]he fact that evidence against a codefendant may have been proportionately greater than the evidence against the complaining defendant is not itself grounds for a severance.'" *State v. Vanasse*, 593 A.2d 58, 67 (R.I.1991). Solely because a defendant asserts that he played a limited role in the crime does not entitle him to severance. *Parente*, 460 A.2d at 438. "Any decision [on the issue of sever-

ance] must be made with a view to the rights of all parties, including those of the victim[s], while having regard for what is 'right and equitable under all of the circumstances.'" *Vanasse*, 593 A.2d at 67.

■ The evidence elicited at trial indicated that defendant drove the automobile throughout the city of Providence while his codefendant was terrorizing, assaulting, and attempting to murder Aguila and ultimately murdered Martinez–Marchado. Aguila and Fresneda testified that defendant and Lopez both possessed guns. The record is absent any evidence that defendant tried to discourage or hinder Lopez's ignominious actions. In fact the record reflects exactly the opposite situation. The defendant actually assisted Lopez in the timing and the execution of these odious crimes. The defendant asked Lopez where *they* should kill the victims. After Lopez shot Aguila, defendant assisted Lopez in establishing that Aguila was still breathing, allowing Lopez to fire another shot into her body to attempt to make certain that she was dead. After the second shot, defendant aided Lopez in incorrectly determining that Aguila was dead.

This was not an especially long or complex trial. The most damaging testimony against both defendant and Lopez was elicited from Aguila. The trial justice "gave full weight to the testimony of most of the witnesses, specifically including the testimony of Aguila." *Lopez*, 583 A.2d at 533. He further stated that "had the case been tried without a jury, the verdicts would have been the same." *Id.* We find that the jury had no difficulty in separating and evaluating the evidence against either defendant. Furthermore, the trial justice impressed upon the jury that "each charge and each defendant must be considered separately." We are not persuaded by defendant's argument that he suffered the spill-over effect from Lopez's reputation as "every citizen's worst nightmare of a drug dealer." If there was even a hint of disparity in the evidence against Lopez and defendant, this jury had little difficulty in identifying and analyzing such evidence as it pertained to each defendant.

We are not convinced that defendant has demonstrated the compelling prejudice necessary to render the denial of the motion for severance an abuse of discretion. The trial justice correctly weighed the benefits of judicial economy against the absence of a showing of substantial prejudice against defendant and properly denied the motion for severance.

## II

## MOTION FOR A NEW TRIAL

The defendant argues that the trial justice was clearly wrong in his decision not to grant defendant's motion for a new trial. The defendant claims that the only damaging testimony against him came from Aguila, who, defendant asserts, has a severe psychosis and a proclivity for lying. The defendant contends that his argument for a new trial is far more "meritorious" than Lopez's. *See Lopez*, 583 A.2d at 532. The defendant asserts that the evidence against Lopez was overwhelming and that the only harmful evidence against defendant came from Aguila. Although defendant contends that his argument for a new trial is far more worthy than that of his codefendant Lopez, we interpret it as both a repeat performance of Lopez's argument for a new trial, *id.*, and a recapitulation of defendant's spill-over-of-evidence argument rejected under our severance discussion.

" '[A] trial justice's ruling on a motion for a new trial is entitled to great weight and will be disturbed only when the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong.' " *State v. Clark*, 603 A.2d 1094, 1096 (R.I. 1992). When a trial justice considers a motion for a new trial and thus acts as a thirteenth juror, he or she

"must consider all material evidence in light of the charge to the jury. Applying independent judgment, the trial justice also passes upon the weight and the credibility of the evidence and accepts or rejects conflicting testimony. At that point the trial justice should draw all proper and appropriate inferences from that evidence. Having performed this function, he or she then determines whether he or she is in agreement with the verdict of the jury. *If the trial justice is in agreement with the jury, the motion for [a] new trial should be denied.* If the trial justice reaches a different conclusion from that of the jury, he or she must then consider whether the evidence is so balanced that reasonable minds might properly come to differing conclusions. The motion for [a] new trial must be denied if the answer to this question is in the affirmative." (Emphasis added.) *State v. Laperche*, 617 A.2d 1371, 1373 (R.I.1992).

The record reflects that in ruling on defendant's motion for a new trial, the trial justice appropriately undertook the proper analysis. The trial justice carefully examined the evidence in light of his charge to the jury that defendant must be proven guilty beyond a reasonable doubt. The trial justice carefully assessed the credibility of each witness individually, giving "full weight" to the testimony of some of the witnesses while identifying other testimony as "essentially credible." The defendant argues that the trial justice erred when he accepted Aguila's testimony as credible. The trial justice specifically stated that he accepted and gave "full weight" to the testimony of Aguila, putting her testimony in the same category as that of the police officer's and the medical examiner's. We find defendant's argument that Aguila was not credible without merit. Aguila was cross-examined ad infinitum and "[t]hroughout the cross-examination defense counsel repeatedly attacked her credibility. In spite of this the trial justice found Aguila's testimony credible and gave it full weight." *Lopez*, 583 A.2d at 534.

The trial justice stated that the jury verdicts "did substantial justice and that had this case been tried without a jury, the verdicts would have been the same." *Id.* at 533. Because the trial justice did not disagree with the jury's verdicts, his new-trial analysis ended and he properly denied the defendant's motion for a new trial. Although the defendant believes that there was not enough credible evidence to sus-

tain his conviction, the trial justice and the jury found otherwise. We find no reason to change that determination. In view of our severance analysis the defendant was not prejudiced by the spill over of incriminating evidence against Lopez. Furthermore this argument does not sway us pursuant to our analysis of the defendant's motion for a new trial. The trial justice did not commit error in denying the defendant's motion for a new trial.

For the reasons herein stated, the defendant's appeal is denied and dismissed. The judgment of the Superior Court is affirmed, and the papers of this case are remanded to the Superior Court.