OPINION OF THE COURT
Stuart Namm, J.
The defendant, Michael Wallace, has been charged in indictment number 3230-82 with one count of attempted murder in the second degree, one count of robbery in the first degree and two counts of attempted robbery in the first degree.
Prior to trial, defendant, contending that he was unlawfully arrested, moved to suppress a written confession and certain oral statements made by him to the police after his arrest, and certain physical evidence seized from him consisting of two false identification cards.
Defendant argues that the warrantless arrest for the New York crime by the San Diego police officer was unlawful and without probable cause; that the Suffolk County police traveled to California to interrogate the defendant although they lacked any arrest power in that State; and finally the California charge was merely a ruse, *296 since it was subsequently dismissed. Consequently, since the oral and written statements and the seized identification cards were the product of an unlawful arrest, suppression thereof is warranted. It is the defendant’s further contention that CPL 570.34, part of the Uniform Criminal Extradition Act (CPL art 570), requires that a formal charge be pending in the courts of another State before an out-of-State warrantless felony arrest can be made.
A hearing was conducted by the court and testimony was elicited from Suffolk County Detective Stephen Cleary and Officer Sherry Phillips of the San Diego Police Department. The officers’ testimony was substantially consistent and was credible. The defendant did not testify, nor did he present any witnesses in his behalf.
FINDINGS OF FACT
On September 16, 1981, at approximately 9:15 p.m., three individuals entered the Selmar Realty office and forcibly stole property from Barbara Periale and attempted to forcibly steal property from her employer, Joseph Can-fora, who was shot with a shotgun carried by one of the perpetrators.
Detective Cleary, a member of the robbery squad, was assigned to investigate the incident. Several hundred yards from the crime scene Detective Kafka recovered Polaroid photographs and undeveloped film which had fallen from the automobile used by the perpetrators in fleeing the scene after having struck a tree. Detective Cleary recognized the defendant as one of the individuals shown in the photographs since he had had prior dealings with the defendant’s family in Central Islip while assigned to the Third Precinct. He knew that the defendant was 6 feet, 4 inches or 6 feet, 5 inches in height.
Several of the witnesses to the events of September 16, 1981 interviewed by Detective Cleary described the masked shooter as an extremely tall, thin black male. Thereafter, the investigation focused on a Robert Lee Jones who was interviewed by Detective Cleary on December 4, 1981. Robert Lee Jones told him that he had participated in the robbery as a lookout along with his brother, Wesley Jones, and a third person known as “Prince,” the *297 defendant, Michael Wallace. Robert Lee Jones confirmed that they had struck a tree and items had fallen from the car. Detective Cleary testified that Robert Lee Jones was 5 feet, 3 inches in height and Wesley Jones was 5 feet, 8 inches or 5 feet, 9 inches tall.
A collect telephone call was received from Wesley Jones who was in jail after his arrest, in which he stated to the police: “I was there, but Michael Wallace shot the guy in the real estate.” The police actively searched for the defendant who had first fled to Queens County and was later believed living with a brother in San Diego, California.
After inquiring, Detective Cleary was informed by the San Diego Police Department that an individual fitting the description provided by the Suffolk County police was living in San Diego but was known by a name different than Michael Wallace. A photograph of the defendant was sent to the San Diego Police Department which confirmed the identity of the defendant.
On December 4,1982, Detectives Cleary and Lowth were detailed to San Diego to arrest the defendant. After a briefing by her superior officer and conversations with the Suffolk detectives, Officer Sherry Phillips, accompanied by Detectives Cleary and Lowth, was sent to arrest the defendant. Prior to the arrest, Officer Phillips was advised that the Suffolk County police were looking for a black male, 6 feet, 5 inches in height, known as Michael Wallace or “Prince”; that he was wanted for attempted murder and robbery in Suffolk County for the shooting of a victim; that negatives and photos found at the crime scene included photographs of the defendant; and that two other suspects had identified Wallace as a participant in the robbery including one who said Wallace was the shooter. The defendant was also a robbery suspect in San Diego.
Officer Phillips advised the two detectives that she would make the arrest since they lacked police powers in the State of California. After driving an undercover van through the defendant’s neighborhood, the defendant was spotted bouncing a basketball in the street. The van was parked and the defendant was approached by Officer Phillips dressed in civilian clothes and the two Suffolk County *298 detectives, likewise in civilian clothes, at approximately 2:20 p.m.
Displaying her “flash badge”, Officer Phillips identified herself to the defendant as a San Diego police officer, and after verifying that he was, in fact, Michael Wallace, advised him that he was under arrest for a robbery in San Diego and attempted murder in New York. At this point prior to being handcuffed arid transported to the precinct, or being advised of his Miranda rights, defendant stated to Detective Cleary, “What are you guys doing here?”, and said he was “glad it was over.” While en route to the precinct, the defendant was advised of his Miranda rights and warnings by Officer Phillips which she read to him from a printed form in her notebook. Defendant acknowledged that he understood such rights and voluntarily agreed to speak to the police in the absence of counsel. He was not questioned while being transported to the station house.
At the police station, defendant was uncuffed and placed in the captain’s office. After being booked and questioned briefly about the San Diego incident by Officer Phillips, he was asked by her if he would speak to the Suffolk County detectives, which he agreed to do. Although expressly informed by Officer Phillips that he did not have to do so, his response was: “sure I’ll talk to them. Why not!”
Defendant was questioned by the Suffolk County officers for a period of 30 or 40 minutes in the captain’s office, with the door ajar. Officer Phillips, positioned 5 feet to 10 feet outside the door, overheard “normal talking.” At 3:30 p.m. the defendant agreed to provide a written statement which took 50 minutes to an hour to prepare. Before signing the written statement, the defendant read it aloud in the presence of Detective Cleary, which Officer Phillips overheard. She then witnessed the defendant’s signature after asking him if he agreed with the accuracy of its contents, if it was altered, or if he felt he had to sign it. Defendant responded: “No, I just want to get this cleared up!” At the request of Detective Cleary, defendant placed his name and date on photographs of the crime scene which were exhibited to him.
*299 Defendant was photographed by Officer Phillips who described defendant’s demeanor as “cooperative and pleasant.” During the period of custodial interrogation, defendant was permitted access to bathroom facilities, and given water, although he had refused an offer of soda. He was neither threatened nor promised anything, nor was he subjected to physical abuse. He did not make any complaints concerning his treatment by the police.
The defendant was indicted by the Suffolk County Grand Jury on December 6, 1982, and he waived extradition to New York. The San Diego robbery charge was subsequently dismissed in the interests of justice.
CONCLUSIONS OF LAW
From the outset, the court has disregarded the dismissed San Diego charge as a legal basis for the arrest, since there was no testimony offered as to the cause for such arrest.
It is clear that the police of Suffolk County had probable cause to arrest the defendant for the commission of the offenses for which he was subsequently indicted. A police officer may arrest a person without a warrant for a crime when he has reasonable cause to believe that a person has committed such a crime. (CPL 140.10, subd 1, par [b].)
Reasonable cause to believe that a person has committed a crime exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such crime was committed and that such person committed it. (CPL 70.10, subd 2.) The interviews of the eyewitnesses to the incident at the Selmar Realty on September 16, 1981 clearly provided the investigating Suffolk County police with reliable evidence and information that a crime was committed. Additionally, several photographs and developed negatives from film which was left at the scene by the escape vehicle, coupled with the physical description of the perpetrators, provided them with a reasonable basis to focus upon Robert Lee Jones, his brother and the defendant as suspects.
Thereafter, both Robert Lee Jones and Wesley Jones were identified in a lineup as participants in the crime. *300 Robert Lee Jones was questioned by the police, to whom he admitted his participation in the robbery together with his brother and the defendant. Likewise, Wesley Jones told the police that he had participated in the incident and implicated the defendant as the individual who fired the shotgun.
Information in possession of one police officer communicated to another may be relied upon by the latter as equivalent to his own knowledge. (People v Lypka, 36 NY2d 210, 213; People v Horowitz, 21 NY2d 55, 60; People v Dunbar, 71 AD2d 805.) Thus, the knowledge and information concerning the incident of September 16, 1981 collected by the Suffolk County police was known by Detective Cleary who imparted that information to Officer Sherry Phillips of the San Diego Police Department. The fact that she was not a member of the police department where the crime had been committed is of no impact. (Cf. People v Lypka, supra, at p 213, n 1.)
Clearly, the Suffolk County detectives who traveled to California lacked the authority to arrest the defendant under the laws of the States of New York and California. The warrantless arrest powers of á New York police officer are strictly confined to the geographical area of the State. (CPL 140.10, subd 3.) The warrantless arrest statute of the State of California provides, in part: “A peace officer may make an arrest * * * without a warrant * * * [w]henever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed.” (Cal Penal Code, § 836, subd 3.) While, as in New York, the arrest powers of a California police officer are limited. to that State, the California statute places no geographical limitation on the commission of the crime.
There was reasonable cause to believe that the defendant had committed the crimes of attempted murder, robbery and attempted robbery in the State of New York, which in California would constitute the felonies of attempted murder in the first degree, robbery in the first degree and attempted robbery in the first degree. (Cal Penal Code, §§ 189, 664, 211, 211a.)
*301 As a peace officer of the State of California, Officer Phillips had the authority to arrest the defendant which she did when accompanied by the detectives of Suffolk County on December 4, 1982 for felonies committed in the State of New York.
Since Officer Phillips had knowledge of the evidence and information which provided reasonable cause to believe that the defendant had committed a crime in Suffolk County, the arrest by her of the defendant in San Diego for the crimes allegedly committed by the defendant in Suffolk County was lawful.
While this court can find no legal precedent to support its conclusion, it is convinced that the defendant’s reliance upon CPL 570.34 is mistaken and erroneous. This statute applies only to the arrest without a warrant of a person in the State of New York upon reasonable information that an accused stands charged in the Courts of another State with a crime punishable by imprisonment for a term exceeding one year. The State of California has adopted the Uniform Criminal Extradition Act and has a statute which parallels CPL 570.34. Thus, the California Penal Code permits the arrest of a person when made by a peace officer, without a warrant, upon information that the accused stands charged in the courts of another State with a crime punishable by imprisonment for a term exceeding one year. (Cal Penal Code, § 1551.1.)
The defendant has not provided, nor has this court found, any authority for the proposition that the provisions of the Uniform Criminal Extradition Act are the sole, exclusive and mandatory means by which an individual who is a fugitive from justice of another State must be arrested, or that the same has replaced the probable cause standard where the crime has been committed in a sister State. Ordinarily, a person may not be extradited to another State unless formal charges are pending in the courts of the State, and the defendant was extradited from the State of California after being indicted by the Suffolk County Grand Jury on December 6, 1982, two days following his arrest by Officer Phillips. However, such indictment or other formal charges is not a prerequisite for an arrest in a sister State where all of the other statutory requisites have been met.
*302 Prior to his questioning by Detective Cleary, the defendant was apprised of his Miranda rights by him and by Officer Phillips. Nothing in the record before this court contradicts that he understood these rights and intelligently waived them before speaking to the police without the presence of counsel.
Accordingly, since the arrest of the' defendant by Officer Phillips was predicated upon probable cause and therefore lawful, the oral admissions given and the written statements signed by the defendant were voluntary, following an intelligent and knowing waiver of Miranda rights by him. There is nothing in the record to indicate that the arrest was orchestrated in a manner as to intimidate or provoke the defendant to speak with the police. He was not threatened, tricked or coerced into speaking with the police, but chose to voluntarily co-operate with them. Accordingly, the request to suppress the oral statements of the defendant, the written statement signed by him after his arrest, and the photographs signed and dated by him, is denied.
The oral statements made to the police during the initial street confrontation (“What are you guys doing here” and “I’m glad it is over”) were not the product of police custodial interrogation, but were spontaneously uttered by him, and as such are admissible at trial. (People v Lynes, 49 NY2d 286; People v Kaye, 25 NY2d 139.)
Finally, the false identification cards seized from the defendant will be suppressed. The People have failed to sustain their burden of proving to the satisfaction of the court beyond a reasonable doubt that they were either voluntarily surrendered by the defendant or seized lawfully from him following his arrest. (People v Di Stefano, 38 NY2d 640; People v Berrios, 28 NY2d 361; also see People v Whitehurst, 25 NY2d 389.)
Moreover, the use in evidence at trial of these items will undoubtedly prejudice the defendant beyond their probative value since they represent evidence of an uncharged crime.
The foregoing decision shall constitute the order of the court.