STATE

v.

**James J. HUGHES III.**

No. 84–117–C.A.

Supreme Court of Rhode Island.

June 7, 1985.

Arlene Violet, Atty. Gen., Joel S. Chase, Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, Chief of Appellate Div., Janice Weisfeld, Asst. Public Defender, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

The defendant, James J. Hughes III, was indicted by a grand jury on November 5, 1982. The indictment charged him with three counts: (1) murder in violation of G.L.1956 (1981 Reenactment) § 11–23–1, (2) robbery in violation of G.L.1956 (1981 Reenactment) § 11–39–1, and (3) larceny over $500 in violation of G.L.1956 (1981 Reenactment) §§ 11–41–1 and 11–41–5.[1] The case was tried before a justice of the Superior Court sitting with a jury that returned a verdict of guilty in regard to felony murder and robbery on November 29, 1983. After denying defendant's motion on De-

---

**1.** On November 14, 1983, the state filed a dismissal of count 3 under 48(a) of the Superior Court Rules of Criminal Procedure.

cember 9, 1983, for a new trial, the Superior Court justice entered a judgment of acquittal on the robbery charge. The record reveals the following facts.

On September 15, 1982, the seventy-nine-year-old victim, Howard "Zeke" Harris, was found dead in the office of his furniture business, Zeke's Exchange, located in North Kingston, Rhode Island. Mr. Harris had been severely beaten and died as a result of severe cranial cerebral trauma. When he was found at approximately 10:30 p.m., his wallet and money were missing and his pocket was turned inside out. Krista Cutting, Zeke's granddaughter, testified that her grandfather had had money in his pockets earlier that day.

The state called twenty-nine witnesses to the stand during its case in chief. Rickie Edmiston testified that he saw defendant standing next to Zeke's truck between 3:40 and 3:50 p.m. Edmiston picked defendant out of a lineup on September 28, 1982, in New York, and he also identified him in court as the man he saw next to the truck. David Shoesmith testified that Zeke's truck almost collided with his vehicle on the airport connector at approximately 3:45 p.m., some three hours after the time defendant claimed the truck was in the airport lot. Detective James M. Ryan established that a fingerprint found on the steering wheel of Zeke's truck matched defendant's print.

The state also presented Raymond Rossi, who had spent time at Riker's Island Prison Facility in New York with defendant. He told the jury that defendant admitted to him that he had killed Zeke Harris. The defendant was the only witness for the defense.

The defendant was arrested in New York City on September 27, 1983. The arrest was made pursuant to a Rhode Island bench warrant issued in April of 1981, out of the Superior Court for the County of Kent, for defendant's failure to appear and answer a charge of uttering and publishing in violation of G.L.1956 (1981 Reenactment)

§ 11–17–1. A copy of the warrant was provided to the defense in discovery and was introduced into evidence at the suppression hearing.[2] After his arrest, defendant was taken to the New York State Police station at the World Trade Center, where he was first questioned by New York authorities and then by Rhode Island police officers. After being advised of his *Miranda* rights, which were given both in oral and in written form by the Rhode Island police, defendant waived these rights and gave a statement. The next morning, he was placed in a lineup at the Manhattan Criminal Court and then arraigned as a fugitive from justice, on the basis of the homicide. The defendant waived extradition in writing and voluntarily came back to Rhode Island.

The defendant moved to suppress the police statement that he gave following his arrest in New York City. The trial justice denied this motion, finding that *Miranda* warnings had been properly given and that defendant had intelligently and voluntarily waived them.

On appeal defendant submits two issues: (I) the trial justice erred in denying the motion to suppress the statement, and (II) the denial of the motions to strike and pass the case violated defendant's right to a fair trial.

I

■ The defendant alleges that because his arrest in New York City was unlawful, his police statement should have been suppressed. The trial justice denied the motion to suppress since he found that defendant had been properly advised of his *Miranda* rights and had voluntarily waived them. In rendering his decision, he refused to rule on the legality of defendant's arrest, finding that *State v. LaRosa*, 112 R.I. 571, 313 A.2d 375 (1974), rendered the legality of the arrest irrelevant. According to *LaRosa*, even though an arrest is illegal,

---

2. There was also an outstanding warrant in New York State for defendant's arrest. The state, however, maintains that this warrant was not relied upon in making the arrest.

a confession may be admitted after the accused has been advised of his constitutional rights and has knowingly and voluntarily waived them.[3] *Id.* at 575, 313 A.2d at 377. In light of this decision, the trial justice reasoned that he had no duty to rule on the legality of the arrest, despite repeated requests from both parties to do so.

■ In *LaRosa* we did hold not only that an illegal arrest does not render a subsequent confession inadmissible per se but also that the confession may be admitted after the accused has been advised of his constitutional rights and has voluntarily waived them. We did not hold, however, that the trial justice had no duty to determine the legality of the arrest. *Id.* at 575, 313 A.2d at 377. As we recently stated in *State v. Adams,* — R.I. —, 481 A.2d 718 (1984), the determination of the legality of the arrest is an essential predicate for the admission of any evidence that might be the fruit of such arrest. *Id.* at —, 481 A.2d at 728. The trial justice in *LaRosa* correctly made this determination before discussing whether any admissions following the illegal arrest had to be suppressed. *State v. LaRosa,* 112 R.I. at 574, 313 A.2d at 376. Because the trial justice in the case at bar failed to make this essential ruling, "we must make an independent judgment concerning whether the arrest was supported by probable cause." *State v. Adams,* — R.I. at —, 481 A.2d at 728; *see In re John N.,* — R.I. —, —, 463 A.2d 174, 176 (1983).

■ To determine whether probable cause existed, we must look to the moment of the arrest and the facts and circumstances within the police officers' knowledge and of which they had reasonably trustworthy information, and decide whether this information is sufficient to warrant a prudent person's believing that the arres-

tee has committed or was committing an offense. *State v. Welch,* — R.I. —, —, 441 A.2d 539, 541 (1982); *In re John C.,* — R.I. —, —, 425 A.2d 536, 538, *cert. denied,* 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1005 (1981). We find that the New York police had knowledge of an outstanding arrest warrant issued against defendant in Kent County Superior Court, Rhode Island. The warrant was issued in April of 1981, upon defendant's failure to appear for arraignment on charges of uttering and publishing in violation of G.L. 1956 (1981 Reenactment) § 11–17–1. The warrant was physically produced and handed over to the New York authorities at the time of the arrest. The New York police therefore had probable cause to arrest defendant as a fugitive from justice, relying upon their knowledge of the valid Rhode Island warrant. The defendant further submits, however, that Rhode Island State Police detective Elmwood M. Johnson made the initial physical restraint and that since Rhode Island authorities may not make an arrest in another state based upon a Rhode Island warrant, the arrest was illegal. *See Stevenson v. State,* 287 Md. 504, 509, 413 A.2d 1340, 1343 (1980); *Berigan v. State,* 2 Md.App. 666, 668–69, 236 A.2d 743, 744 (1968).

We agree with defendant, and with the finding of the trial justice, that Johnson was the first physically to grab defendant, but we also find that the record discloses quite clearly that it was New York and not Rhode Island authorities who effectuated the arrest of defendant in New York. Detective Johnson was merely acting under the aegis of the New York officials who had probable cause to make the arrest. *See State v. Baton,* — R.I. —, —, 488 A.2d 696, 700 (1985); *Berigan v. State,* 2 Md.App. at 669, 236 A.2d at 745.

---

**3.** As later decided in *State v. Burns,* — R.I. —, —, 431 A.2d 1199, 1205 (1981), if the state wants to introduce a statement given subsequent to an illegal arrest, the state has the initial burden of showing that the defendant's statement meets the voluntariness standard required by the Fifth Amendment, but must also

demonstrate that the causal connection between the statement and the illegal arrest is so broken as to dispel the primary taint of the illegal seizure. *See Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

Even if the arrest could have been validly executed pursuant to the Rhode Island bench warrant, defendant maintains that the arrest was still illegal because the accused was not taken before a local criminal court with all practicable speed as required by the New York Code of Criminal Law Procedure, § 570.34 (McKinney 1984), which provides the authority for a warrantless arrest of a person charged with a crime in another state. The defendant also asserts that the state failed to comply with this statute because a complaint was made against him setting forth the ground for the arrest as the homicide, instead of the charge of uttering and publishing. We do not agree.

■ Section 570.34 is part of the Uniform Criminal Extradition Act and applies only if the accused challenges extradition. The record reveals that defendant waived extradition in writing and voluntarily came back to Rhode Island. According to the New York Code of Criminal Law Procedure § 570.50, a person arrested in New York for having committed a crime in another state may waive the issuance and service of the warrant provided for in §§ 570.18 and 570.20 and any other procedure incident to extradition proceedings by executing a writing that states that he consents to return to the demanding state. Since § 570.34 covers a procedure incident to the extradition proceedings, it need not be adhered to because defendant had voluntarily waived extradition. *See Hagans v. United States,* 408 A.2d 965 (D.C.App.1979).

■ Assuming, arguendo, that § 570.-34 did apply, we find that it was not violated. After the arrest, defendant was brought to the New York police department in the World Trade Center and processed for other crimes he had committed in the State of New York. He was then turned over to the Rhode Island authorities, who properly advised him of his *Miranda* rights. No one disputes that defendant was given these rights and that he voluntarily waived them. The trial justice found voluntariness, and defendant has not

attributed error on the voluntariness aspect of his motion to suppress. Once defendant waived these rights, any statements he made were admissible. *State v. Verlaque,* —— R.I. ——, ——, 465 A.2d 207, 210–11 (1983); *State v. Jennings,* —— R.I. ——, ——, 461 A.2d 361, 368 (1983). The defendant had every right to remain silent and not to give a statement. Instead he chose to waive his rights and submit himself to the questioning. From his confession the state established sufficient probable cause to arrest him for the Harris homicide. The next morning he was placed in a lineup and then brought to Manhattan Criminal Court on the more serious charge, the homicide.

The state has not violated the statute merely because defendant was not brought to "night court." We find that when the Rhode Island authorities were given the opportunity to question defendant, the evening was quite late, and we believe that it was reasonable in these circumstances to wait until early the next morning to bring defendant before a local court. Accordingly, the state satisfied the practicable-speed requirement.

■ The state also met the second criterion of § 570.34 since a complaint was made against defendant setting forth the ground for the arrest. The defendant claims, however, that the complaint should have been based on the Rhode Island uttering-and-publishing warrant, which was the supposed basis for his arrest, and not on the homicide inquiry.

In construing this section of the Uniform Criminal Extradition Act in *People v. Wallace,* 120 Misc.2d 295, 466 N.Y.S.2d 150 (1983), a New York court held that the provisions of the Uniform Criminal Extradition Act are not the sole, exclusive, and mandatory means by which an individual who is a fugitive from justice from another state may be arrested. *Id.* at 301, 466 N.Y.S.2d at 154–55. In light of this interpretation, we find that the state did comply with the terms of the statute. From defendant's voluntary confession, the state

established sufficient probable cause to arrest him for the homicide of Zeke Harris and this additional ground for the arrest formed the basis of the complaint. The statute does not mandate that the initial arrest must be the sole basis for the ultimate charge if probable cause for a more serious charge is established.[4]

We accordingly affirm the trial justice's denial of the motion to suppress defendant's confession since the New York authorities made a valid arrest and defendant gave his statement after voluntarily waiving his *Miranda* rights.

## II

The defendant next contends that the trial justice erred in denying the motions to strike testimony concerning defendant's involvement in criminal activities unrelated to the case at trial and the resulting motion to pass the case. In denying these motions, defendant alleges that the trial justice violated his right to a fair trial.

The first of this allegedly harmful testimony was given by the state's witness, Joseph Santangini. As part of the discovery process, Santangini had turned a police statement over to the defense. In that statement dated October 6, 1982, he said that on September 14, 1982, he, Anthony Vellucci, and defendant planned to rob a drug dealer of his drugs. The drug dealer, however, never showed up, so the robbery never took place. Santangini claimed in this police statement that defendant told them that although the score was off for that night, it would take place the following day and he would get in touch with them.

The trial justice held that pursuant to *State v. Colangelo*, 55 R.I. 170, 179 A. 147 (1935), evidence of other crimes may be introduced in very limited circumstances to prove "guilty knowledge, intent, motive, design, plan, scheme, system, or the like." *Id.* at 174, 179 A. at 149. Since the evidence of the crimes planned for September 14, 1982, did not meet the *Colangelo* exception, the trial justice adhered to the general rule that evidence of these prior crimes was irrelevant and inadmissible. *See State v. Cardoza*, —— R.I. ——, ——, 465 A.2d 200, 202 (1983); *State v. Pignolet*, —— R.I. ——, ——, 465 A.2d 176, 179 (1983).

Nevertheless, Santangini testified at trial that he met Vellucci and defendant on September 14, and that defendant asked if he could borrow the gun for the score the next day. After this direct testimony, defendant moved to pass the case, relying on the allegedly unfair implication created by Santangini concerning the "score of tomorrow."

The trial justice denied the motion to pass, finding that the evidence was both material and relevant and that the state had acted in good faith. He did allow the defense to utilize its right of cross-examination for seeking the truth and undermining any unfair implication created by Santangini's testimony. Defense counsel then elicited testimony from Santangini that on the night of September 14, he, Vellucci, and defendant were going to rob somebody of drugs and that since the intended victim did not show up, they rescheduled this "score" for the next day.

We recently considered the issue of denial of a motion to pass in *State v. Caprio*, —— R.I. ——, 477 A.2d 67 (1984). In *Caprio* we held that in reviewing this motion, we must determine whether the question raised creates such prejudice that it is inexpiable and "totally extraneous to the issues in the case and tend[s] to inflame and arouse the passions of the jury." *Id.* at ——, 477 A.2d at 73 (quoting *State v. Mancini*, 108 R.I. 261, 273–74, 274 A.2d 742, 748 (1971)). We shall only overturn the decision if it is clearly wrong.

■ In introducing evidence of the "score", the state violated the order of the

---

4. Upon return to Rhode Island, on March 1, 1983, defendant pled nolo contendere to the uttering and publishing count and received a one-year suspended sentence and one year's probation.

trial justice that evidence of prior crimes would be inadmissible at trial. The state had the duty to adhere conscientiously to his order by instructing its witnesses not to slip in any references to defendant's past criminal activity. Once the "score" was mentioned, the defense had no other alternative but to follow the trial justice's suggestion of cross-examining Santangini. Even though cross-examination revealed that the "score" referred to an attempted robbery and not to the Harris homicide, and even though we ultimately find that the state's error in introducing this evidence was rendered harmless by the other overwhelming evidence establishing defendant's guilt, *see State v. Riendeau,* —— R.I. ——, ——, 448 A.2d 735, 739 (1982), we feel compelled to mention that we do not condone the state's action and recommend that it comply with the trial justice's orders in the future.

The defendant also alleges that testimony from Anthony Vellucci linking defendant with other crimes should have been stricken and the subsequent motion to pass the case should have been granted. Vellucci also testified about the planned drug robbery on September 14. Vellucci stated that when the dealer did not appear, defendant claimed that he wanted to tie up the mother and the father and steal everything in sight. He further testified that in September of 1981, defendant had asked him to go to New York and buy drugs for him. Defense counsel's motion to strike this testimony was denied. Vellucci continued and testified that while in New York on that prior occasion he robbed defendant of some money and that defendant thereafter broke into Vellucci's house. In light of this testimony, defense counsel again moved to pass the case, claiming that the state should not have brought in evidence of prior criminal activity and that no cautionary instructions would cure the undue prejudice.

We have consistently held that the prosecution cannot introduce evidence of an accused's bad character unless and until the accused offers evidence of his or her good character. *State v. Pule,* —— R.I. ——, ——, 453 A.2d 1095, 1097 (1982); *see Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). During jury selection, defense counsel mentioned that defendant was a narcotics user and that he had been convicted of robbery. The record discloses, however, that the prosecution, regardless of whether it happened by surprise or by plan, was the first to introduce testimony at trial on defendant's involvement with drugs, breaking and entering, and robbery. The state contends that it was proper for the state to introduce evidence of bad character of the accused since defendant had already opened the door by presenting evidence of defendant's character during jury selection. We do not agree with this argument since the purpose of voir dire is merely securing a competent, fair, and unprejudiced jury and not eliciting evidence that can be used at trial. *Commonwealth v. Perea,* 252 Pa.Super. 272, 275, 381 A.2d 494, 496 (1977); *Commonwealth v. Thompson,* 328 Pa. 27, 31, 195 A. 115, 118 (1937). The prosecution thus erred in being the first to introduce evidence of defendant's character.

The defendant's assertion that he was severely prejudiced by this testimony, however, is undercut by defense counsel's repeated reference to defendant's involvement with drugs and to his prior criminal record not only during defense counsel's opening statement, but also in his direct examination of defendant and his closing argument. The defendant cannot suggest that any reference by the state's witnesses to defendant's bad character and potential criminal activity can be prejudicial enough to support a new trial and at the same time have spread similar references upon the record throughout the trial.

In this situation, cautionary instructions did sufficiently neutralize any prejudice inherent in any of the state's remarks. *See State v. Pailin,* 114 R.I. 725, 729, 339 A.2d 253, 256 (1975). We also find that any prejudice was further rendered harmless

**92**

beyond a reasonable doubt by the overwhelming quantum of proof of the defendant's guilt. *State v. Riendeau,* —— R.I. at ——, 448 A.2d at 739. Relying on this reasoning, we affirm the trial justice's denial of the motions to strike and to pass the case.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

MURRAY, J., did not participate.