424 A.2d 1057 (1981)
STATE
v.
Darrel A. AMADO.
No. 80-3-C.A.
Supreme Court of Rhode Island.
January 20, 1981.
*1059 Dennis J. Roberts, II, Atty. Gen., Stephen R. Famiglietti, Sp. Asst. Atty. Gen., for plaintiff.
Gerard McG. DeCelles, Providence, for defendant.

OPINION
BEVILACQUA, Chief Justice.
The defendant, an inmate at the Adult Correctional Institutions (ACI), was indicted along with two other inmates, David Collins and James Foreman, for conspiracy to assault a correctional officer of the maximum custodial unit of the ACI in violation of G.L. 1956 (1969 Reenactment) § 11-1-6, as enacted by P.L. 1975, ch. 283, § 2 and G.L. 1956 (1969 Reenactment) § 11-25-2. Prior to trial, all three defendants filed respective motions to suppress statements given to the State Police relating to this charge. After a hearing, the trial justice granted the motions to suppress for each defendant. The state, pursuant to G.L. 1956 (1969 Reenactment) § 9-24-32, as amended by P.L. 1972, ch. 169, § 10, appeals only the granting of the defendant Amado's motion to suppress.
The defendant had been held at the ACI for approximately two weeks when, on September 18, 1978, correctional officer Dana Lassy was beaten and stabbed. At the suppression hearing, defendant gave his version of the events that followed the assault. The defendant testified that after a shakedown he was placed in handcuffs and taken involuntarily to the attorney's room by Sergeant Moffat and Detective O'Neil of the State Police. There, the pair informed defendant that he was a suspect in the assault and then explained to defendant their belief that he was hiding information and that defendant would be taken "to the barracks." Subsequently, defendant was taken to the State Police barracks, arriving handcuffed and frightened. While being transferred to the barracks, Detective O'Neil told defendant that when a prisoner, still subject to state custody, leaves the ACI "they [fellow inmates] think you're ratting," i.e., talking to the police or informing on other prisoners.
Upon reaching the barracks, the officers gave defendant a phone "to call his attorney." The defendant claimed, however, that he was never asked if he had an attorney. At the barracks, Detective O'Neil told defendant that if he were charged, he might be put on death row. Then Sergeant Moffat explained to defendant that he would not be charged if he gave a statement. Another officer, Captain Pare, told defendant that if he offered information, the authorities would remove his "stuff" from "maximum" and put him in protective custody. The defendant stated further that Sergeant Moffat asked him to take a polygraph test, referred to by Sergeant Moffat as the "best polygraph in New England." Sergeant Moffat also showed defendant a pamphlet describing the test, but defendant contended that his comprehension was minimal because of his limited reading skills.
The state, through Sergeant Moffat, presented its own description of Amado's interrogation. According to the sergeant, defendant was read his rights in the attorney's *1060 room at 2:30 p.m. and agreed to go to the barracks provided defendant did not have to return to the ACI. No attorney was requested by defendant. Moffat admitted suggesting to defendant that if defendant gave a statement at the barracks, he would be placed in protective custody.
After taking the "polygraph test," the officers confronted defendant with certain discrepancies between his initial statement and the results of the test.[1] It was at this point that defendant made certain statements incriminating himself as a principal in the crime. Although defendant was advised of his rights again, he agreed to sign a waiver; the time was 9:30 p.m. Sergeant Moffat denied that he made any threats, used physical force, or made any promises to defendant. At 10:15 p.m., after signing the statement incriminating himself and the other defendants, Amado was offered protective custody which he accepted. Earlier on the day of the stabbing, at 9:35 a.m., a Superior Court judge had appointed the public defender to represent all persons involved in the incident. Sergeant Moffat, however, denied that he knew there had been a lawyer appointed for defendant at the time of the barracks interrogation.
Sergeant Moffat did recall informing defendant that the guard was in critical condition and, that if the guard died, the assault would become a capital offense and consequently defendant would be charged with harboring a crime of murder. The sergeant conceded he was aware that defendant had been in the ACI for only a short time. Sergeant Moffat did not deny telling defendant that once he was at the "barracks," the other prisoners would assume defendant was informing on them. Additionally, Sergeant Moffat remembered that defendant was nervous and upset after being confronted with the discrepancies in his statement.
Sergeant Moffat agreed that the waiver form was not signed in the attorney's room because none was offered and that the form was executed after defendant was brought to the barracks. According to Sergeant Moffat, no offer of police protection was made until defendant expressed his fears about returning to the ACI. The sergeant explained, however, that he did not believe defendant was under arrest during the questioning even though he had informed defendant of his rights, in compliance with Miranda, and the possibility of being charged with harboring. Finally, Sergeant Moffat acknowledged his continued questioning of defendant "to afford him an opportunity to answer those questions [the replies to which had contained inconsistencies] again."
The trial justice granted the motions to suppress,[2] holding that "the statements were not given completely voluntarily, but rather as the result of promises of reward, and without the benefit of counsel and are therefore inadmissible at their trial." The trial justice found that "all of the group were suspects from the beginning" and that defendants did not waive their constitutional rights in a manner that squared with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The prosecution, however, claims that defendant Amado made his statement voluntarily and that he knowingly and intelligently waived his constitutional rights.
"A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938); see Thornley v. Mullen, 115 R.I. 505, 511, 349 A.2d 158, 161 (1975). "`[C]ourts indulge every reasonable presumption against waiver' of [a] fundamental constitutional right[]." Johnson v. Zerbst, 304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. at 1466 (quoting in part Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177, 1180 (1937)); see United States v. Dorsey, 591 F.2d 922, 933 (D.C. Cir.1979).
*1061 In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that prior to custodial interrogation a suspect must receive explicit warnings concerning his constitutional privilege against self-incrimination and his right to counsel.[3]Id. at 478-79, 86 S.Ct. at 1630, 16 L.Ed.2d at 726. Additionally, Miranda imposed a primary rule that no statement obtained during custodial interrogation is admissible unless the prosecution proves that the suspect knowingly and intelligently waived his rights before making the statement. Id. at 475, 478-79, 86 S.Ct. at 1628, 1630, 16 L.Ed.2d at 724, 726.
Miranda established further that a waiver cannot be presumed from the silence of the accused or from the fact that he has made a confession. Id. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724. Rather, the determination of whether there has been a waiver depends in each case upon "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." North Carolina v. Butler, 441 U.S. 369, 374-75, 99 S.Ct. at 1755, 1758, 60 L.Ed.2d 286, 293 (1979) (quoting Johnson v. Zerbst, 304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. at 1466). Indeed, the Court now refers to the appropriate test for ascertaining the existence of a valid waiver as the "totality-of-the-circumstances approach." Fare v. Michael C., 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197, 212 (1979). And underlying this "approach" is the more basic condition that the prosecution bears a large burden of convincing a court that a defendant waived the privilege against self-incrimination or the right to counsel in an informed and intelligent manner. Id. at 724, 99 S.Ct. at 2571, 61 L.Ed.2d at 212; Miranda v. Arizona, 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724; State v. Vargus, 118 R.I. 113, 122, 373 A.2d 150, 154 (1977). Despite the presumption against a finding of waiver, however, the trial judge may make such a finding without proof of an express waiver. If "waiver can be clearly inferred from the actions and words of the person interrogated," then the court may sustain an assertion of waiver by the prosecution. North Carolina v. Butler, 441 U.S. at 373, 99 S.Ct. at 1757, 60 L.Ed.2d at 292. And evidence secondarily derived from a police interrogation may be admissible even though the police fail to comply strictly with the procedural safeguards outlined in Miranda if the confession is otherwise voluntary. Michigan v. Tucker, 417 U.S. 433, 444-46, 450, 452, 94 S.Ct. 2357, 2364-65, 2367-68, 41 L.Ed.2d 182, 193-94, 196-97 (1974).
Consistent with the limits of Fifth Amendment protections, a truly voluntary confession is admissible evidence in a criminal prosecution. Miranda v. Arizona, 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726. But a defendant is denied his right to the due process of law if his conviction is based upon an involuntary confession. Jackson v. Denno, 378 U.S. 368, 376, 84 S.Ct. 1774, 1780, 12 L.Ed.2d 908, 915 (1964). Thus, any use in a criminal trial of the defendant's involuntary statement is a denial of due process. Mincey v. Arizona, 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290, 303 (1978); Payne v. Arkansas, 356 U.S. 560, 568, 78 S.Ct. 844, 850, 2 L.Ed.2d 975, 981 (1958). Moreover, the defendant is entitled to an independent hearing to determine the voluntariness of his statement. Jackson v. Denno, 378 U.S. at 376-77, 84 S.Ct. at 1780-81, 12 L.Ed.2d at 915; State v. Boswell, 73 R.I. 358, 361, 56 A.2d 196, 198 (1947). See also Sims v. Georgia, 385 U.S. 538, 543-44, 87 S.Ct. 639, 643, 17 L.Ed.2d 593, 597-98 (1967). At this hearing, the prosecution must prove the voluntariness of the defendant's confession by at least a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 489, 92 S.Ct. 619, 626-27, 30 L.Ed.2d 618, 627 (1972). In Rhode Island, the state must prove voluntariness by clear and convincing evidence. State v. Espinosa, 109 R.I. 221, 230, 283 A.2d 465, 469-70 (1971).
*1062 A review of all the "attendant circumstances" is as important to a consideration of the voluntariness of a confession as it is to the determination of whether a knowing and intelligent waiver was made. Compare Lynumn v. Illinois, 373 U.S. 528, 534-35, 83 S.Ct. 917, 920-21, 9 L.Ed.2d 922, 926 (1963) with Fare v. Michael C., 442 U.S. at 725, 99 S.Ct. at 2572, 61 L.Ed.2d at 212. See also Haynes v. Washington, 373 U.S. 503, 513, 83 S.Ct. 1336, 1342-43, 10 L.Ed.2d 513, 520 (1963). When deciding questions of waiver, courts usually examine the behavior of the defendant as well as the defendant's statements. The voluntariness of a confession, however, often turns on the conduct of the interrogators. Project: Criminal Procedure, 68 Geo.L.J. 291, 361-84 (1979); see, e.g., North Carolina v. Butler, 441 U.S. at 374-75, 99 S.Ct. at 1758, 60 L.Ed.2d at 293; Mincey v. Arizona, 437 U.S. at 398-402, 98 S.Ct. at 2415-18, 57 L.Ed.2d at 304-06; Brewer v. Williams, 430 U.S. 387, 404-05, 97 S.Ct. 1232, 1242-43, 51 L.Ed.2d 424, 439-41 (1977); Hutto v. Ross, 429 U.S. 28, 30, 97 S.Ct. 202, 203, 50 L.Ed.2d 194, 197 (1976); Davis v. North Carolina, 384 U.S. 737, 742-52, 86 S.Ct. 1761, 1765-70, 16 L.Ed.2d 895, 898-904 (1966). The test for voluntariness is whether the defendant's statements were "the product of his free and rational choice," Greenwald v. Wisconsin, 390 U.S. 519, 521, 88 S.Ct. 1152, 1154, 20 L.Ed.2d 77, 80 (1968), or the result of the coercion that had overcome the defendant's will at the time he confessed. Lynumn v. Illinois, 372 U.S. at 534, 83 S.Ct. at 920, 9 L.Ed.2d at 926. Similarly, if a confession is obtained by direct or implied promises or improper influence, it will be deemed involuntary. Bram v. United States, 168 U.S. 532, 542-43, 18 S.Ct. 183, 187, 42 L.Ed. 568, 573 (1897); see United States v. Powe, 591 F.2d 833, 840 (D.C. Cir.1978).
When the state claims that the trial justice erred in finding that defendant did not waive his constitutional rights or the statements were not voluntarily given, this court must apply the "clearly erroneous" rule. State v. LaRosa, 112 R.I. 571, 576, 313 A.2d 375, 377 (1974); State v. Leavitt, 103 R.I. 273, 290, 237 A.2d 309, 318 (1968). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the basis of the entire evidence is left with the definite and firm conviction that a mistake has been committed." State v. LaRosa, 112 R.I. at 576, 313 A.2d at 377. Having articulated the proper standard of review on appeal, we also note an inherent difficulty in examining a question of voluntary confession and waiver. The two issues  voluntariness of the confession and knowing and intelligent waiver  can easily merge. For example, the circumstances under which the Miranda warnings were given might affect a finding of voluntariness; and admitting a confession into evidence that was obtained after an involuntary waiver of the privilege against self-incrimination would be a direct violation of the Constitution. Miranda v. Arizona, 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724; cf. State v. Espinosa, 109 R.I. 221, 227, 283 A.2d 465, 468 (1971) (example of trial judge's separate instructions on waiver and voluntariness).
The trial justice in the instant case found that defendant did not waive his Miranda rights in a knowing and intelligent manner.[4] Moreover, the justice determined that the admissions by defendant were "not given completely voluntarily * * *."
No one disputes that the State Police gave defendant his Miranda warnings. But this fact does not end our inquiry into the propriety of admitting defendant's statements at trial. See Fare v. Michael C., 442 U.S. at 725, 99 S.Ct. at 2572, 61 L.Ed.2d at 212; Lynumn v. Illinois, 372 U.S. at 534-35, 83 S.Ct. at 920-21, 9 L.Ed.2d at 926-27. The defendant testified that he was brought by the police to the attorney's *1063 room, that he was interrogated on several occasions, and that he was scared. The police admitted that they did not believe defendant was under arrest even though he was taken from his cell to the attorney's room. According to the police testimony, they merely engaged in a casual conversation with defendant. The police officers, however, admitted further that defendant did not sign the waiver form until he was taken to the barracks, that they knew defendant had been at the ACI only a short time, and that when they took defendant to the barracks, defendant was told that if he went back to the prison population, other prisoners would assume that defendant had "ratted." At this point, defendant told the officers he was scared and that he did not want to go back to his former cell. Additionally, the police acknowledged that they told defendant he could be charged with harboring, that the guard was in critical condition, and that if he died, defendant would be charged with a capital offense.
The defendant also testified that he did not clearly understand his right to counsel and his privilege against self-incrimination, nor was he aware that he did not have to take a polygraph test. Cf. United States v. Little Bear, 583 F.2d 411, 413 (8th Cir.1978) (prosecution must show defendant consented to take polygraph test). Although he signed the waiver form, defendant stated he does not read well. The police countered that no physical violence or threats were employed, that defendant voluntarily made the statements without coercion, and that they recited the Miranda warnings to defendant on several occasions.
Our examination of the record, considered in light of the principles we have recited, confronts us with evidence from which conflicting inferences could be drawn. The standard of review on appeal bears repeating: the trial court's finding of fact, including its credibility determinations on the question of voluntariness, must be sustained unless clearly erroneous. State v. LaRosa, 112 R.I. at 576, 313 A.2d at 377. From this record it appears that the trial justice could reasonably find that the defendant Amado had been subjected to subtle pressures and improper influences. These pressures and influences deprived the defendant of the right to waive his constitutional privileges knowingly and voluntarily and to make a confession free from coercion. Therefore, the trial justice's granting of the motion to suppress the defendant's statements was not clearly wrong.
The state's exception to the decision of the trial justice suppressing the defendant's admissions is overruled, and the case is remitted to the Superior Court for further proceedings.
NOTES
[1] In his first statement, defendant denied any knowledge of the events surrounding the assault.
[2] As noted, the state is appealing only the motion granted in favor of defendant Amado.
[3] Subsequently, the Court held that a suspect does not lose his right to receive Miranda warnings simply because he is already incarcerated for an offense separate from that which his interrogators wish to question him. Mathis v. United States, 391 U.S. 1, 4-5, 88 S.Ct. 1503, 1504-05, 20 L.Ed.2d 381, 384-85 (1968).
[4] Although not ruling explicitly on the Miranda issue, the trial justice stated, "it appears to me that [Miranda waiver forms] were signed after each of them had given incriminating statements." Later in his opinion, the justice proclaimed, "it's difficult for me to believe that these three men would talk to the State Police all of this extended time and never ask for a lawyer."