DECISION
This matter is before the Superior Court on remand from the Supreme Court where, in pertinent part, the defendant had appealed the trial justice's denial of his motion to suppress his confession during questioning by police officers on the grounds that his previous unequivocal request for counsel was denied. In its remand, the Supreme Court directed the Superior Court to determine what was said by the defendant and to determine whether the defendant's utterance constituted to an unequivocal request for counsel.
 Facts/Travel
After trial in January 1997, the defendant was found guilty of second-degree murder. Appealing his conviction to the Supreme Court, the defendant contended, in pertinent part, that during the suppression hearing, the trial justice erred in denying his motion for a continuance so that an expert could determine the exact words used by defendant when he mentioned a lawyer. To decide the appeal, the Court had to determine "whether the words — "Do I need a lawyer?' — or — the words — "Can I get a lawyer?' — were uttered" during the course of a police interrogation. State v. Dumas 750 A.2d 420, 421 (R.I. 2000). After holding that the condition of the evidence precluded it from deciding the merits of the appeal, the Court remanded the case for further factfinding on the critical issue of exactly what the defendant had said during questioning. In particular, the Court directed the Superior Court to
 "appoint a neutral expert who is qualified to obtain the best enhancement of the videotape that current technology can provide. The Court, in addition to ascertaining the statements on the videotape, also shall gather testimony from the police officers present during the questioning concerning their independent recollections of what was said on this issue during the interrogation of defendant. In presenting a considered opinion on what words defendant spoke, the expert can be questioned by the parties.
 After examining all this evidence, the justice shall make a finding of fact on what was said by the defendant and whether defendant's statement amounted to an unequivocal request for counsel." Dumas, 750 A.2d at 425.
Accordingly, the critical issue before this court is whether the defendant "attempted to assert his right to counsel." Id. at 424.
The defendant's request arose in the following context. On October 16, 1995 at approximately 12:30 p.m., the defendant voluntarily entered the Woonsocket Police Station. He claimed to have information concerning a crime which had been unsolved for nearly five years and involved the death of a woman ultimately determined to be caused by ligature strangulation. For the next nearly twelve hours, he provided the police with a detailed account of the murder events. Portions of the statement were videotaped. During this period, the defendant stated that he could not recall some details of the murder.
At some time between 11:30 p.m. and 12:30 a.m., while the video camera was turned off, the police showed the defendant photographs of the victim's corpse in an attempt to trigger his memory. After looking at the photographs, the defendant told the police that he had tied a rope around the victim's neck. Immediately, the police told him that he was a suspect in the murder and advised him of his constitutional rights.
Shortly thereafter, the police resumed the videotaping. When the officer asked the defendant if he wanted to continue the interview, he did not respond. Once more, this time on videotape, the police explained the defendant's constitutional rights and inquired whether he wished to continue speaking with them. The defendant told the officers that he was confused and, during this exchange, uttered the word "lawyer." The police responded, "It's not up to us. The statement is yours, Marc." The defendant replied, "I don't understand this." The officer asked, "What don't you understand?" to which the defendant responded, "Everything," and subsequently, "I don't understand at all you know." Following this exchange, the defendant made further comments to the police.
Pursuant to the remand directive, this Court, sitting in for the trial justice who has since been elevated to the Supreme Court, ordered not one — but two separate examinations of the videotape to see if it could be enhanced to allow for a finding of what the defendant had said. The first expert who testified said, in essence, her findings were inconclusive. The second expert, Mr. Thomas Owen of OWL Investigations, Inc., stated that the defendant said, "Can, can I have a lawyer?" He assured this Court that the result constituted the best enhancement available.
During the hearing, the State called two witnesses, Detectives Renaud and Roy, who testified about their recollection of what the defendant had said. Neither could, understandably, state with certainty what they had heard, presumably the result of the passage of time. Each testified, over defendant's objections, that hearing "today" both the videotape and enhanced videotape refreshed their recollections of what they had heard. They testified the defendant said, "Do I need a lawyer?"
Each one was of the opinion, however, that whether the defendant said — "Do I need a lawyer?" — or — "Can I get a lawyer?" — was irrelevant because neither was an unequivocal request for counsel. Each testified that since both were, in effect, questions, they were neither bound to answer nor consider either a request for counsel. Apparently, the trial justice also agreed.
Based on review of the videotape, enhanced videotapes, and the credible testimony of Expert Owen, this Court finds that the defendant uttered, "Can, can I have a lawyer?"
 Invocation of Right to Counsel
As stated in Dumas, the United States Supreme Court has determined that
 "in order to safeguard the right against self-incrimination provided by the Fifth Amendment to the United States Constitution, a suspect who is subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning. Miranda v. Arizona, 384 U.S. 436, 469-73, 86 S.Ct. 1602, 1625-27, 16 L.Ed.2d 694, 720-23 (1966). This right to counsel may be waived by the suspect after the police have informed the individual of his or her rights. North Carolina v. Butler 441 U.S. 369, 372-73, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286, 291-92 (1979). If a suspect in custody makes an unequivocal request for counsel at any time, the United States Constitution requires that the police cease questioning until counsel is present. Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378, 386 (1981). The Supreme Court has also determined that under the Fifth Amendment, if a suspect makes an equivocal or ambiguous statement concerning an attorney, the police are not required to cease questioning and are permitted to continue the interrogation. Davis v. United States, 512 U.S. 452, 461-62, 114 S.Ct. 2350, 2356, 129 L.Ed.2d 362, 373 (1994)." 750 A.2d at 424.
In Dumas, our Supreme Court embraced the following "clear" guidelines for determining when a statement concerning an attorney is an equivocal assertion of the right to counsel:
 "The applicability of the "'rigid" prophylactic rule' of Edwards requires courts to "determine whether the accused actually invoked his [or her] right to counsel.' . . . To avoid difficulty of proof and provide guidance to officers conducting interrogations, this is an objective inquiry. . . Invocation of the Miranda right to counsel "requires at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.' . . . But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning.
 Rather the suspect must unambiguously request counsel. As we have observed, `a statement either is such an assertion of the right to counsel or is not,' . . . Although a suspect need not `speak with the discrimination of an Oxford don.' . . . he [or she] must articulate his [or her] desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis, 512 U.S. at 458-58, 114 S.Ct. at 2355, 129 L.Ed.2d at 371." 750 A.2d at 425.
The Davis Court encouraged but did not require interrogating officers to clarify a suspect's ambiguous reference. 512 U.S. at 459, 114 S.Ct. at 2355. The Court noted that "[c]larifying questions help protect the right of the suspect by ensuring that he [or she] gets an attorney if he [or she] wants one, and will minimize the chance of a confession being supressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement regarding counsel." Id. at 461, 114 S.Ct. at 2356. In an earlier case, Smith v. Illinois, the Supreme Court has instructed that
 "[w]here nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease. In these circumstances, an accused's subsequent statements are relevant only to the question whether the accused waived the right he [or she] had invoked. Invocation and waiver are entirely distinct inquiries, and the two must not be blurred by merging them together." 496 U.S. 97, 98, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984).
Therein, the Court held that "an accused's post-request responses to further interrogation may not be used to case retrospective doubt on the clarity of the initial request itself. Such subsequent statements are relevant only to the distinct question of waiver." Id. at 100, 105 S.Ct. at 495.
In this matter, having determined that as a matter of fact the defendant uttered — "Can, can I have a lawyer?" — this Court next must determine whether such statement amounted to an unequivocal request for counsel. As recognized by the Supreme Court in Dumas the phrase "Can I get . . .?" is "an acceptable and reasonable way to frame a request," 750 A.2d at 425, which "is clearly understood as a request for a particular desired object or action." Id. at 425 n.5. Nevertheless, the Court indicated that the "reasonably-understood meaning of the phrase depends on the circumstances in which the words are uttered." Id. According to the Supreme Court, "Can I get a lawyer?" could invoke a defendant's constitutional right to counsel under Miranda. Id. at 424. However, according to the Court, such determination, a mixed question of law and fact, must be made in the first instance by a trial court justice based on the particular circumstances, including the responses of the officers and any other remarks by the defendant. Id. at 425.
The defendant's request — "Can, can I have a lawyer?" — came twelve hours into the interview and immediately following the advisement of his constitutional rights in the context of his status changing from witness to suspect in a murder case. Having been advised of his right to counsel, the defendant, after initially being silent, responded, "Can, can I have a lawyer?" He did not make any accompanying contradictory statement. Applying the objective legal standard, to the circumstances herein, the defendant's request reasonably could be construed by a police officer to mean that he wanted a lawyer. Accordingly, this Court finds that the defendant sufficiently expressed his intent to have the assistance of counsel. State v. Sabetta,680 A.2d 927, 932 (R.I. 1996) ("Invocation of the right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'") (citing McNeil v. Wisconsin, 501 U.S. 171, 178, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158, 169 (1991)). The defendant's request here is reasonably understood not as an ambiguous or equivocal assertion but rather as an unequivocal invocation of his right to counsel. See, e.g., Carter v. State, 697 So.2d 529, 531-32 (Fla. App. 1997) ("Can I get a lawyer?" recognized by the police and the trial court as request for an attorney).
 Waiver of Right to Counsel
Before responses made by a defendant during custodial interrogation can be admitted into evidence, a voluntary, knowing and intelligent waiver of his or her Miranda rights must be shown by the state. State v. Leuthavone, 640 A.2d 515, 519 (R.I. 1994). It is well-established that a waiver cannot be presumed from the silence of the accused or from the fact that he or she has made a confession. State v. Amado, 424 A.2d 1057, 1061 (R.I. 1981). In determining whether a defendant has made a knowing, intelligent and voluntary rights' waiver, the court must view the "totality of the circumstances surrounding the interrogation," Leuthavone 640 A.2d at 518-19, including the background, experience and conduct of the accused. Amado, 424 A.2d at 1061. Of course, the courts indulge every reasonable presumption against waiver of fundamental constitutional rights. Id. at 1060 (Emphasis added.) Despite this presumption, proof of express waiver is not required. Id. at 1061. Rather, waiver can be clearly inferred from the actions and words of the suspect. Id. If a defendant properly waives his rights, the authorities are free to question him. Sabetta, 680 A.2d at 932. However, a heavy burden rests upon the state's attorney to show that a defendant waived his or her right to counsel in an informed and intelligent manner. Amado, 424 A.2d at 1061. In Rhode Island, a defendant's confession is admissible against him or her only after the state proves by clear and convincing evidence that the defendant knowingly and intelligently, and voluntarily waived his or her constitutional rights. State v. Briggs, 756 A.2d 731, 735 n.5 (R.I. 2000); State v. Brouillard, 745 A.2d 759, 762 (R.I. 2000); State v. Nardolillo, 698 A.2d 195, 200 (R.I. 1997).
The statement itself — "Can, can I have a lawyer? — militates against finding that the defendant knowingly and intelligently waived his right to have counsel present. In addition, following the police officer's statement of the defendant's Miranda rights, the defendant, after initially being silent, thrice verbalized his lack of understanding. Specifically, at one point after being advised of his Miranda rights, he told the officers he was "confused." Later, when he asked — "Can, can I have a lawyer?" — and the police responded — "It is not up to us. The statement is yours, Marc." — the defendant replied, "I don't understand this." Sergeant Renaud then asked "What don't you understand?" — and the defendant responded, "Everything." Asked again what he did not understand, the defendant said, "I don't understand at all, you know." Further, based on this Court's viewing of the videotaped colloquy, the defendant acted agitated and nervous. Based on the totality of the circumstances, obviously including the defendant's request to the authorities, and his thrice-expressed lack of understanding, as well as his demeanor on the videotape, this Court cannot find by clear and convincing evidence that the defendant knowingly and intelligently waived his right to the presence of counsel. Leuthavone, 640 A.2d at 519 (The "waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.").
After examining all the evidence presented, this Court finds that the defendant said, "Can, can I have a lawyer?" Further, that in the circumstances of this particular case such statement constituted an unequivocal request for the assistance of counsel. Finally, even if such request were not reasonably interpreted by the police to be an invocation of the right to counsel, the evidence fails to prove by any standard that he knowingly, intelligently and voluntarily waived both his right to counsel and his right not to incriminate himself.
Accordingly, this Court grants the defendant's motion to suppress with respect to all statements made following — "Can, can I have a lawyer?" — and consistent with the Supreme Court remand orders that a new trial be granted.